ANN L. WHEELER, PLAINTIFF-RESPONDENT, v. W. KEN-NETH WHEELER, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 16, 1957—Decided December 26, 1957.

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. William Krueger* argued the cause for appellant (*Messrs. Parnell & Krueger,* attorneys).

*Mr. Benjamin M. Ratner* argued the cause for respondent.

The opinion of the court was delivered by

GOLDMANN, S. J. A. D. Plaintiff sues for separate maintenance and defendant counterclaims for divorce.

Leave to appeal having been granted, defendant husband seeks review of so much of an interlocutory order of the Chancery Division as directed (1) payment of a $1,000 counsel fee *pendente lite* to his wife's attorney, and costs; (2) dismissal of the second count of his counterclaim for divorce on the ground of extreme cruelty; and (3) giving plaintiff leave to take his deposition as to his financial status, the cost to be paid by him.

The parties married in 1930 and lived together until the end of February 1955, when plaintiff left the marital

home, taking with her cash, U. S. War Savings Bonds and securities, together totalling at least $250,000. Defendant at once brought an action for an accounting (*Docket* C–1904–54) alleging—the details are unimportant here—that the money, bonds and securities were his, he had never made or intended to make a gift of them to his wife, and she had taken them without his knowledge or consent. The wife filed no answer, the action being settled a few months later and a dismissal entered. We have before us the release, prepared by the wife's attorney and executed by her August 24, 1955, reciting that in consideration of the settlement and of her husband paying "approximately $100,000 for the due maintenance and support" of plaintiff, she released and forever discharged him from any action, claim or demand, past, present or future, which she might have against him by reason of any cause whatsoever.

In May 1957 plaintiff instituted her present action for separate maintenance, charging that defendant had unjustifiably separated from her in February 1955 and refused and still refuses to make adequate provision for her support and maintenance. As though anticipating a possible defense, she alleges in her complaint that the release executed in August 1955, although stating that $100,000 was for her maintenance and support, actually represented a property settlement and not a lump sum settlement of her right to support. Defendant's answer denied he had separated himself from plaintiff; detailed the 1955 accounting suit and its ultimate settlement by whose terms plaintiff retained in excess of $100,000, which money was intended for her maintenance and support; admitted he had not paid her any additional sums since she took his money and securities, but denied he was in default or had violated any law with respect to plaintiff's support. By way of counterclaim defendant sought divorce on two counts, the first charging desertion in February 1955, and the second extreme cruelty.

The first part of the extreme cruelty count alleges that plaintiff's cruel treatment of defendant began shortly after the marriage; that over the years and in increasing measure

she called him vile and offensive names; that she incessantly accused him of adultery with many of his friends and patients, with nurses and employees of the various hospitals with which he was connected, and with wives of his associates; that she maliciously told his associates and others in the medical profession that he was addicted to narcotics; that she told many of his medical associates and patients that he had illicit relations with their wives; that in 1954 she stated to the medical director of the Presbyterian Hospital of Newark that he was having illicit relations with his operating nurse; and that she habitually insulted friends who visited their home, so that it became impossible for defendant to entertain them there. The remainder of the second count sets out specific acts of alleged extreme cruelty. To all these charges plaintiff entered a categorical denial.

It was not until after the filing of this counterclaim that plaintiff asked for *pendente lite* relief. She moved for an order directing defendant to pay her reasonable support, counsel fees and costs *pendente lite,* striking the extreme cruelty count of the counterclaim on the ground that it was too general in its allegations, and permitting her to amend her complaint to request reformation of the release to conform to the intention of the parties, *viz.,* that the $100,000 paid to her was in complete settlement of the accounting action and not a release of her right to support. The motion was supported by her affidavit charging that defendant had taken to excessive drinking and, while under the influence of liquor, physically abused her; that he threatened to have her committed to a mental institution; that fearing his treatment and threats she had taken $250,000 in money, bonds and securities in February 1955 and left the marital home to live in New York; that the release she had given was merely in settlement of the accounting action and did not represent support that might be due her; and that despite his means defendant was not supporting her. She claimed she needed $361 a week to live. She denied the charges made in the counterclaim, both as to desertion and extreme cruelty.

The husband countered with a motion to dismiss the complaint and directing that his deposition not be taken. (It does not appear from the pleadings just when plaintiff may have requested the taking of such deposition.) The motion was supported by his affidavit again rehearsing the facts of plaintiff's departure with his funds and securities two years before, and charging that in the end she had managed to retain for herself over $148,000, or more than half of his assets. Defendant denied he had ever physically mistreated or threatened plaintiff, or that he drank liquor to excess. He charged plaintiff with having left him, and with a course of cruel and inhuman treatment, including calling him vile and offensive names and continually accusing him of adultery and with being a drug addict. Finally, he alleged that plaintiff had more than adequate funds to support herself; that he did not abandon or refuse to support her, and that she had brought the present action in bad faith for the purpose of harassing him.

Accompanying defendant's affidavit were the affidavits of two medical associates and friends. The first doctor states that plaintiff repeatedly told him defendant was having affairs with his wife and the wives of his associates, with nurses and many of his patients, and that· he was addicted to drugs. The second states that shortly after plaintiff left her home she told him she had done so because defendant was having affairs with his nurse and patients and was drinking to excess; further, that in the summer of 1954 when he was treating defendant for a serious vascular ailment, plaintiff told him there was no necessity for continuing on the case because another physician had been engaged.

In a reply affidavit plaintiff denied the allegations made in the affidavits of her husband and his associates.

The Chancery Division judge denied defendant's motion, and also plaintiff's application for support *pendente lite,* with the condition that if the court found for her on final hearing, she would have the right to apply for support retroactive to the date of her motion. He considered her

request for a $6,500 counsel fee *pendente lite* as excessive, but allowed $1,000. He also granted plaintiff's request to amend her complaint to include reformation of the release, and ordered the taking of depositions as to defendant's financial status, at his expense. Finally, he granted the motion to strike the second count of the counterclaim for failure to set forth acts of extreme cruelty with particularity, defendant being given leave to amend so as to state with particularity the following:

"the vile and offensive names plaintiff is alleged to have called defendant;

the names of defendant's friends, patients, nurses, employees of the various hospitals with which he is connected and wives of his associates, with whom plaintiff is alleged to have charged defendant with having committed adultery;

the dates, times and places where said acts are alleged to have been committed;

the names of defendant's associates and other members of the medical profession whom plaintiff is alleged to have told that defendant was addicted to narcotics and that he was a constant user of them;

the names of defendant's medical associates and patients whom plaintiff is alleged to have told he had illicit relations with the wives;

the name of the Medical Director of the Presbyterian Hospital of Newark to whom plaintiff is alleged to have stated in 1954 that defendant had illicit relations with his operating nurse;

the name of the nurse and date, time and place when the alleged illicit act or acts were committed;

the names of friends whom plaintiff is alleged to have insulted while they were visiting the home;

the name and address of the physician to whom plaintiff is alleged to have instructed not to treat defendant for the vascular ailment of his leg."

We agree with the defendant that the court should not have awarded counsel fees and costs *pendente lite* based upon the affidavits submitted.

█ Allowance to the wife of preliminary relief by way of maintenance, suit money and counsel fee *pendente lite,* in an action for separate maintenance, has been considered

as coming under the inherent jurisdiction of the court, arising *ex necessitate*. *Wilson v. Wilson,* 14 *N. J. Misc.* 33, 181 *A.* 257 *(Ch.* 1935); *Shaffer v. Shaffer,* 129 *N. J. Eq.* 42, 44 *(E. & A.* 1941). The power to make such an allowance passed from the former Court of Chancery into the successor Superior Court, and existed independent of any statute. It may be observed that although the former statute, *R. S.* 2:50–37, provided only for *pendente lite* relief in an action for divorce or nullity, *N. J. S.* 2A:34–23 presently authorizes such an allowance pending "any matrimonial action," thus confirming the inherent power lodged in the court. And see *N. J. S. A.* 2A:34–24, *note* 53.

In an action for separate maintenance, the wife's affidavits in support of her application for *pendente lite* relief must make out a *prima facie* case. Corroborating affidavits are not necessary. If such a case is established, the mere denial of the charge by the husband under oath will not necessarily preclude an *ad interim* award. 10 *N. J. Practice (Herr, Marriage, Divorce and Separation)* (2d ed. 1950), § 369, *p.* 355, and the New Jersey authorities there cited. However, it has been said that no award should be made if the husband denies the charge under oath and produces affidavits which make it doubtful that the wife will succeed at the trial. The court exercises particular caution in a suit for separate maintenance where it appears that the complaining wife has left the home and seeks to justify her departure. *Ibid.* In *Suydam v. Suydam,* 79 *N. J. Eq.* 144 *(Ch.* 1911), where Vice-Chancellor (later Chancellor) Walker fully considered the question of *pendente lite* relief in an action brought by the wife for separate maintenance, he said:

"The rule deducible * * * seems to be that as well in cases for divorce *a mensa et thora* as in those for alimony pure and simple [separate maintenance], where the wife has in fact left the husband on account of his alleged derelict conduct, her application for alimony and counsel fee *pendente lite* will be scrutinized and decided upon the weight of the testimony then presented and the rules of law applicable thereto, just as other litigated motions are decided, even though she be a favored suitor. * * *

While the mere denial of the husband under oath of the charge against him will not necessarily, and, it seems to me, ought not, under ordinary circumstances, to relieve him from the payment of preliminary alimony and counsel fee, nevertheless, it seems equally clear, that where his sworn denial is abundantly corroborated, and the case made by the pleadings and affidavits on the preliminary motions is with him by the application of the usual rule concerning the burden of proof, he should not be visited with any interlocutory order for allowances where it appears that the wife has left him either because of his alleged extreme cruelty or adultery; because, a wife who leaves her husband does so at her peril, and assumes the burden of making the desertion constructively his by establishing his guilt by clear and satisfactory proof. * * *" (79 *N. J. Eq.* at *pages* 148–149)

Although we have strong doubt as to whether the wife has made out a *prima facie* case of abandonment and failure to support, particularly in view of the fact that in the accounting action some two years before she had been left with $100,000 or more for her "due maintenance and support," we choose to rest our determination that counsel fees *pendente lite* should not have been allowed because no necessity therefor appears.

▮ An application for alimony and counsel fees *pendente lite* is grounded in necessity. In the early days our courts made such allowances almost as a matter of course because, at common law, the husband by reason of the marriage contract acquired complete control over all property owned by his wife at the time of the marriage, or which she might acquire during coverture. That being the case, unless the court required the husband to support his wife and to furnish her with the means of prosecuting her suit or defending his, she would be left destitute and defenseless during the litigation. Accordingly, in almost all cases she was regarded as a privileged suitor, who had a right to call upon her husband for both support and the means necessary to carry on the litigation.

However, under the Married Woman's Acts (*R. S.* 37:2–12 to 15) she was permitted to acquire and hold property in her own name as if she were a single woman, to bind herself by contract, *etc.* The rational foundation for the old rule

had therefore ceased to exist, and when the reason of the law ceases, the law itself ceases.

█ It is now settled that a wife is not entitled as of right to support and counsel fees *pendente lite,* but the matter lies in the court's discretion. This has been so since the early case of *Marker v. Marker,* 11 *N. J. Eq.* 256, 258 (*Ch.* 1856), where it was observed that when the wife is a suitor, "the question will be—whether she has property independent of her husband, and the court will exercise its discretion in the allowances of alimony and costs, having reference to the respective pecuniary circumstances of the husband and wife."

To the same effect, *Westerfield v. Westerfield,* 36 *N. J. Eq.* 195 (*Ch.* 1882), citing 2 *Bishop on Marriage and Divorce,* § 394, who said that "When the wife has sufficient separate property, the reason for giving her either temporary alimony, or money to defray her expenses in the suit, does not exist and she is not entitled to either." In *Nashman v. Nashman,* 33 *N. J. Super.* 602 (*App. Div.* 1955), the husband sought review of the *pendente lite* allowances of maintenance, suit monies and counsel fees allowed in his wife's separate maintenance action. At the time she left him she took $1,500 from their joint bank account. Her complaint recited that she had about $5,000 in a savings account, although in an answering affidavit she conceded she had about $6,000. The court held that she was not entitled to *pendente lite* relief, observing that courts should not, through the medium of maintenance *pendente lite,* encourage an abandonment of one spouse by another. *Cf. Handelman v. Handelman,* 17 *N. J.* 1 (1954), a case where the wife, less than two months before her complaint for separate maintenance was filed, withdrew $5,000 from a building and loan account. Speaking of *pendente lite* allowances, the court there said:

"These allowances, when made, are usually predicated upon the circumstance frequently encountered where a wife has no independent means to support herself or to enforce her marital rights where the marriage has foundered and husband and wife have separated. Here, however, when the application for alimony *pen-*

*dente lite*, counsel fees and suit money was made, the court, upon the facts presented by affidavit of the parties, found the plaintiff was not in necessitous circumstances, the family home was available to the appellant and her children and the defendant had provided for their maintenance.

This finding is supported by the record. * * *" (17 *N. J.* at *page* 7)

*Cf.* Annotation, 35 *A. L. R.* 1099, 1101 (1925).

We have remarked upon the fact that plaintiff had $100,000 or more in her possession in August 1955, less than two years before she filed her complaint. Even if she had dipped into this fund at the rate of $361 a week, the amount she says she must have for her own needs—and we very much doubt if she spends anything like that sum—she could at best have expended no more than $33,000 in the 91 weeks intervening. She certainly has sufficient means of her own, not only to support herself (we recall here that the court refused support *pendente lite*) but also to prosecute her separate maintenance action and defend against her husband's counterclaim.

The fact that a counterclaim for divorce has been visited upon her, and she is put to her defense, does not, on the factual record so far exhibited, entitle her to an allowance in view of the more than adequate sufficiency of her available funds. The State's interest in the marital relation—always an important consideration—is sufficiently protected. An allowance can always be made to the wife at the close of the case for the expense she was put to in engaging counsel, should she be successful, or even if the litigation go against her where the equities move the discretion of the court to look with favor upon her timely application.

The practice, sometimes observed, of the attorney of a wife well supplied with funds coming into court on an application for counsel fees merely because the defendant husband is a man of income, is not to be encouraged except in a very special case. The husband is not to be made the golden target of an application for support, suit money and counsel fees *pendente lite*, except in a situation of demonstrable need.

We reach our conclusion entirely apart from the fact that the trial court denied plaintiff support *pendente lite,* for in a separate maintenance action the allowance of counsel fee to aid the wife in bringing her cause to trial may be granted in a proper case, even though her application for alimony *pendente lite* be denied. *Oram v. Oram,* 77 *N. J. Eq.* 1 (*Ch.* 1910); *Hopson v. Hopson,* 95 *N. J. Eq.* 540 (*Ch.* 1924).

The allowance of counsel fee will, therefore, await final hearing.

The provision of the order directing that the deposition of defendant as to his financial status be taken at his own expense was also error. The expense should be borne by the wife in the first instance; the question as to who ultimately is to bear the cost may be resolved at final hearing. Plaintiff's counsel, incidentally, concedes that the information he wants may be gotten by interrogatories so far as defendant is concerned, and he is satisfied to pursue that course. Accordingly, the order will be modified to provide for discovery of defendant's financial circumstances through interrogatories. Here we may note that such discovery does not fall within the provisions of *R. R.* 4:98–5, which states that

"In an action for divorce or nullity, depositions, interrogatories and admissions pursuant to Rules 4:16 to 4:23 and 4:26 to 4:28 are not allowed except by order of the court for good cause shown."

The rule, by its own terms, does not apply to a separate maintenance action, where examination into the financial means of the respective spouses and the needs of the wife is a matter of prime importance. Plaintiff is free, of course, to examine other persons on depositions, but she will have to do so at her own expense in the first instance.

We now address ourselves to that part of the order which struck the extreme cruelty count of the counterclaim and gave leave to defendant to amend, setting forth with particularity the facts which appear in the quotation from the order reproduced above. *R. R.* 4:8–1 requires a pleading

which sets forth a claim for relief to contain a statement of the facts on which the claim is based, showing that the pleader is entitled to such relief. *R. R.* 4:8–5 provides that pleadings shall be simple, concise and direct, no technical form being required, and *R. R.* 4:8–6 states that all pleadings shall be so construed as to aid substantial justice. In *Grobart v. Society for Establishing Useful Manufactures,* 2 *N. J.* 136, 150 (1949), the late Chief Justice Vanderbilt observed that the flexibility and seeming informality of pleadings under the new rules should not deceive one into believing that the essentials of sound pleadings have been abandoned under our new practice: "They remain the same as at common law, as a matter of substantive law as well as of good pleading."

■■■ Although pleadings at common law were construed most strongly against the pleader, the present canon of construction is that the essence of an actionable claim will be pieced out and sustained, however inept the pleading may be. *Cohen v. Miller,* 5 *N. J. Super.* 451 (*Ch. Div.* 1949); and see *Puccio v. Cuthbertson,* 21 *N. J. Super.* 544 (*App. Div.* 1952). In *Cabakov v. Thatcher,* 27 *N. J. Super.* 404, 408 (*App. Div.* 1953), this court said that in considering whether a cause of action is stated, the infirmities of a complaint not substantive in character will be overlooked.

■■■■ The first part of the extreme cruelty count in the counterclaim generally apprised plaintiff of her husband's grievance... Had the trial court dismissed the count with prejudice, there would have been error. However, the court allowed defendant to plead over by amending the counterclaim, and in this we find no reversible error. In *Brown v. Brown,* 2 *N. J.* 252 (1949), the husband filed a petition for divorce on the ground of simple desertion. He did not prove the charge, but instead attempted to show extreme cruelty on the part of the wife as justifying his quitting the marital home. The court held that "Liberal as our new rules are for the promotion of substantial justice, they still require that a defendant be fairly apprised of the

claim he is called upon to meet," and held that the facts establishing constructive desertion based upon acts of extreme cruelty must be pleaded with particularity. (The court went on to say that while it was mindful of the fact that liberality exists in the amendment of pleadings, even after judgment, to conform to the evidence where issues not raised by the pleadings are tried by consent or without objection by the parties, the petitioner could not be permitted to plead and try his case upon one theory and then, if unsuccessful, advance another theory on appeal.) *Cf. Cohen v. Cohen,* 20 *N. J. Super.* 503 (*App. Div.* 1952). What would be true in a constructive desertion case as to giving the opposing party sufficient information to enable him to meet the charges, would also be true in an action for divorce based upon extreme cruelty. The pleader should set forth the alleged act or acts of extreme cruelty with sufficient particularity to enable the defendant fairly to meet the charge or charges. 11 *N. J. Practice* (*Herr, Marriage, Divorce and Separation*) (*2d ed.* 1950), § 1141, *p.* 382.

 However, the order under review required the amended counterclaim to set out the alleged acts of extreme cruelty with such particularity as to call upon defendant to plead his proofs. This he is not required to do. The order should therefore be modified to require the second count of the counterclaim to be amended to set out the following additional facts:

1. The vile and offensive names plaintiff is alleged to have called defendant.

2. The names of those persons to whom plaintiff is alleged to have said that defendant was addicted to narcotics.

3. The names of those whom plaintiff is alleged to have told that defendant had illicit relations with wives, patients, nurses and hospital employees.

4. The name of the physician whom plaintiff is alleged to have instructed not to treat defendant for his vascular ailment.

5. The names of friends whom plaintiff is alleged to have insulted while they were visiting the marital home.

6. The closest approximation of dates, within defendant's memory, when the specific acts upon which he will rely at the trial occurred.

To require defendant in his counterclaim to give such information called for by the order as the names of the women with whom plaintiff charged him with having illicit relations, is not essential to her defense and might result in prematurely maligning those who may possibly be innocent of any involvement with defendant. If plaintiff actually requires the information to prepare for trial she may apply to the court for discovery.

In summary, the provisions of the order requiring defendant to pay a counsel fee *pendente lite* and the cost of taking his own deposition is reversed. Plaintiff will inquire into defendant's financial status in the first instance through the use of interrogatories. The striking of the second count of the counterclaim and permitting defendant to plead over is affirmed, except that he need amend the extreme cruelty count only in the particulars above set forth.