200 N.J. Super. 361 (1985)
491 A.2d 752
CARLOTTA D'ONOFRIO, PLAINTIFF-APPELLANT,
v.
STEPHEN G. D'ONOFRIO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 11, 1985.
Decided April 3, 1985.
*363 Before Judges McELROY, DREIER and SHEBELL.
Ronald L. Bennardo argued the cause for appellant (Curry & Stein, attorneys; James J. Curry, Jr., on the brief).
Alan J. Cornblatt argued the cause for respondent (Alan J. Cornblatt, on the brief).
*364 The opinion of the court was delivered by DREIER, J.A.D.
Plaintiff has appealed from a divorce judgment incorporating the terms of an antenuptial agreement. The issue was severed and specially referred to a judge who rendered a decision finding the agreement legal and binding. A court order to that effect was entered over a year prior to the divorce hearing.
In this appeal plaintiff contends that the antenuptial agreement was void in that it was inequitable, grossly unfair and unconscionable. She also argues that even if the agreement is not void, it is subject to modification based upon changed circumstances. Plaintiff's remaining claims assert that the denial of an alimony award was error, as was the requirement that defendant need pay only $3,500 of her counsel fees.
Plaintiff and defendant lived together for several years prior to their marriage and their only child, Stephanie, was born to them in 1967. They were married on June 22, 1971 shortly after they signed a "Prenuptial Agreement" prepared by defendant's attorney who advised plaintiff that she should have independent legal representation; however, such representation was waived. The agreement by its terms barred plaintiff from claiming any right, including a dower right, to all real estate owned by defendant and any right to his personal property "in the event the marriage for any cause or in any manner during the lifetimes of the parties terminates or is annulled." Plaintiff also appointed defendant as her attorney-in-fact. The consideration for the agreement was both the marriage and the payment of $1,000 to plaintiff evidenced by defendant's note against which payments were to be made into a savings account to be opened in her name at a local bank. These payments were made. The agreement further represented that defendant "has a substantial estate consisting principally of realty, and [plaintiff] is without a substantial estate of either realty or personalty." The parties further acknowledged "that the monetary value to be received by [plaintiff] hereunder is or may be *365 out of all proportion to that to which as a wife she would be entitled."
The proofs further showed that plaintiff fully understood the effect of this agreement, and about the time it was signed even explained to one of her friends that she had to give up all rights to defendant's property if she wanted to marry him. Significantly, the agreement did not deal with an award of alimony.
On October 27, 1982 the specially-assigned judge entered an order finding that plaintiff received the $1,000 consideration, entered into the agreement with "full understanding of all relevant facts" and had been dealt with fairly after full disclosure of such facts prior to the execution of the agreement. Thus he found the agreement "to be a legal and valid agreement, binding upon the parties."

I
This appears to be the first New Jersey appellate case presenting for adjudication the enforceability of an antenuptial agreement in a divorce action under New Jersey law[1]. Cf. Kelso v. Kelso, 96 N.J. Eq. 354 (E. & A. 1924) (enforcing such agreement against a husband's claim that transfers made pursuant thereto constituted an improvident gift); Smith v. Executors *366 of Moore, 4 N.J. Eq. 485 (Ch. 1845), aff'd sub. nom. Moore v. Smith, 5 N.J. Eq. 649 (E. & A. 1847) (enforcing antenuptial agreement in estate proceedings); Chaudry v. Chaudry, 159 N.J. Super. 566 (App.Div. 1978) (involving interpretation of an agreement executed in accordance with the customs and usage of Pakistan and, thus, found effective in New Jersey); Fern v. Fern, 140 N.J. Super. 121 (App.Div. 1976) (prenuptial agreement found to terminate on death and not to be intended by the parties to apply in the event of a divorce). See also 1 Skoloff, New Jersey Family Law Practice (5 ed. 1984), § 7.4B at 7-10 to 7-15.
Although ordinarily we would render a more detailed analysis of the pros and cons of enforcing an antenuptial agreement in a divorce proceeding and would analyze out-of-state authority, such a comprehensive exposition and analysis has been published within the past year by Judge Lesemann in the Chancery Division, Family Part; our reexpression of the principles there stated is unwarranted. See Marschall v. Marschall, 195 N.J. Super. 16 (Ch.Div. 1984). We agree with the conclusion reached by Judge Lesemann and, for the reasons he stated, find that "antenuptial agreements fixing post-divorce rights and obligations should be held valid and enforceable." 195 N.J. Super. at 27. We further agree that rather than granting such agreements "only grudging acceptance," the courts should welcome and encourage such agreements at least "to the extent that the parties have developed comprehensive and particularized agreements responsive to their peculiar circumstances." Id. at 28-29 (quoting Petersen v. Petersen, 85 N.J. 638, 645-646 (1981)).
Citing Lepis v. Lepis, 83 N.J. 139 (1980), Judge Lesemann also noted that an antenuptial agreement should "be regarded as subject to modification by reason of `changed circumstances' in the same manner as property settlement agreements." 195 N.J. Super. at 28, n. 3. We need not decide this issue for three reasons. First, the subject is better analysed in the context of *367 a claim for alimony, a subject not treated in the agreement before us. Second, since it appears that virtually all of the parties' assets were owned by defendant prior to the marriage, N.J.S.A. 2A:34-23 (last paragraph) excludes the equitable distribution of such property. Although during the parties' 11 years of marriage there were sales and purchases of various parcels of real estate, assets "for which the original property may be exchanged or into which it, or the proceeds of its sale, may be traceable shall similarly be considered the separate property of the particular spouse." Painter v. Painter, 65 N.J. 196, 214 (1974). Thus, solely the personal property acquired by defendant during the marriage would be the subject of the agreement. Lastly, plaintiff has not demonstrated sufficient changed circumstances to warrant consideration of this issue as to personal property.
Plaintiff has also asserted the unfairness of the agreement as a basis for our refusing to enforce it. In a court of equity the judge should inquire into such allegations, since claims of fraud, overreaching, duress or the like on the part of defendant might well bar the enforcement of the agreement. These matters, however, were inquired into by a separate judge who found against plaintiff on the facts. Our review of the record convinces us that his factual conclusions have a substantial foundation. Plaintiff knew of defendant's assets in detail prior to the marriage, since both prior to and during the marriage she acted as bookkeeper for her husband, noting the payment of rents and mortgages. Substantially the only asset of the parties was the real estate owned by defendant prior to the marriage. The value of the various properties owned by defendant was not significantly enhanced by plaintiff's efforts. Thus, there is no justification for a claim by her to participation in the increased value of the real estate. Painter, 65 N.J. at 214, n. 4; cf. Scherzer v. Scherzer, 136 N.J. Super. 397, 400-401 (App.Div. 1978), certif. den. 69 N.J. 391 (1976). We perceive no reason to upset the trial judge's finding that there was no factual basis to overturn the agreement.

*368 II
Although the trial judge justifiably started his financial analysis with the effectiveness of the antenuptial agreement (bolstered by the non-inclusion of the vast majority of the parties' property for equitable division purposes), this background should have had a profound effect upon the need to grant alimony and child support so that plaintiff could "share in the economic rewards occasioned by her husband's income level (as opposed merely to the assets accumulated), reached as a result of their combined labors inside and outside the home." Gugliotta v. Gugliotta, 160 N.J. Super. 160, 164 (Ch.Div.), aff'd, 164 N.J. Super. 139 (App.Div. 1978).
This issue was complicated by the underemployment of the parties. Defendant was content principally to manage his properties, and plaintiff was content to work for the Girl Scouts at a lower salary than she could have obtained in other employment, but which freed her for her duties as a wife and mother. The parties' combined income of approximately $30,000 was found by the trial judge to be less than they could have earned with full employment. The court found that plaintiff could have earned $12,000 and defendant $30,000, had they sought full-time employment. Plaintiff and their daughter were, however, entitled to be maintained at the level appropriate to a family income level of $30,000 as established during the marriage, and not merely to the "bare-bones" budget used by the court as its standard. Lepis v. Lepis, 83 N.J. at 153-161.
In the January 10, 1984 divorce judgment plaintiff's application for alimony was denied. However, plaintiff was permitted to occupy the marital home until the earlier of (1) Stephanie's becoming emancipated or living away from the premises, or (2) plaintiff remarrying, desiring to move from the premises or entering into some other agreement with defendant. There is no mortgage on this home and defendant was required to pay the real estate taxes. The balance of the expenses were to be defrayed by plaintiff. Child support payments were not *369 described in the judgment, but rather in a separate agreement between the parties requiring the application of certain trust payments to provide $120 per week for Stephanie's support, as well as an additional amount for the real estate taxes on the marital home and the child's tuition or other expenses for private schooling. These instructions to the trustee bank are to apply so long as the child is unemancipated.
The net effect of these provisions is to provide plaintiff with the marital home at minimal expense (insurance, maintenance repairs and utilities), as well as $120 a week plus Stephanie's tuition and other schooling expenses. This income coupled with plaintiff's earnings was found by the court to be sufficient to meet the minimal standard noted above, but fails to take into consideration certain factors. No provision, for instance, is made for the period after the child's emancipation. She was 15 as of the date of the divorce and will be 18 in April 1985. If, as is expected, she continues her education through college, plaintiff will be receiving supplemental family income for a few more years. But at the time of Stephanie's emancipation, either by graduation from college, marriage or some earlier event, the supplemental income for plaintiff's household will abruptly cease, as will her entitlement to live in the former marital home. She will be left with no assets and but a minimal income. The situation will in no way permit her to share in the standard of living enjoyed by her and her former husband during their marriage. We realize that the trial judge provided effectively for plaintiff's support for the years between the divorce and the daughter's emancipation in a manner that would have a minimum income tax effect upon her. Plaintiff will reside in a home which defendant is to provide for his daughter, and a portion of the household expenses will be defrayed from child support payments. This plan, however, fails to provide for any continuing support of plaintiff to the standard enjoyed during the marriage after crediting her with her earnings. This is not to say that alimony provisions must cover all eventualities, since upon changes in circumstances a *370 spouse may apply to the court for an appropriate modification, Lepis v. Lepis, 83 N.J. at 158. This order, however, provides for no alimony and fails to establish the standards for plaintiff's continued support.
In cases where there has been substantial equitable distribution of property and a dependent spouse's own income will be supplemented by unearned income from the investment of the distributed property, a court might determine that, upon the reduction of expenses with the emancipation of any dependent children, the total income of the dependent spouse might be sufficient to maintain her (or him) to the standard of living enjoyed during the marriage. In this case, however, the earnings history of plaintiff and the lack of any equitable distribution make it highly unlikely that plaintiff's total income after Stephanie's emancipation will even approach a sum necessary to maintain plaintiff in the standard of living established during the marriage. Upon remand, therefore, the court should establish such a standard and provide in an amended judgment for the current support to which plaintiff is entitled. If it does not appear that a change in support will be necessary until the emancipation of the child, the standard may be set now, but a suitable application should be withheld until such later time.

III
The trial judge should also reconsider on remand the allocation of medical expenses. The divorce judgment requires that plaintiff defray one-half of the unreimbursed medical expenses for the daughter. We assume that the court found that the child support payments from the trust were sufficient to warrant such equal division of unreimbursed medical expenses. However, considering the difference in the parties' incomes and assets, a significant medical expense might place an undue burden upon plaintiff because her income is minimal and she has no capital assets from which to defray a major expense. *371 Defendant on the other hand has both greater income and some $400,000 in capital assets.

IV
Lastly, plaintiff has complained that defendant was ordered to pay only $3,500 of her $12,290 counsel fees. The affidavit of services indicates that 83.3 hours were expended by a partner and 52.8 hours by an associate, and the trial judge made no findings as to the necessity for the services nor the basis upon which defendant was ordered to pay less than 30% of these charges. See Williams v. Williams, 59 N.J. 229, 233 (1971), and contrast the considerations when substantial equitable distribution is made to the wife in Pascarella v. Pascarella, 165 N.J. Super. 558, 565 (App.Div. 1979); Shaffer v. Shaffer, 154 N.J. Super. 491, 495 (App.Div. 1977). On remand, the trial court should consider the nature and effect of the services rendered, the reasonableness of the fees charged and the ability of each of the parties to defray such expenses from his or her income and resort to capital assets. If the award of alimony, child support and related expenses is to remain as originally ordered after the trial court has reconsidered the matters noted in this opinion, it would appear that an equitable division would be for defendant to pay 80% of those fees found reasonable and necessary for the prosecution of this litigation. We note that plaintiff has already paid her attorneys $3,700 and may be entitled to a refund upon defendant's satisfying his share. Of course if an amended award of alimony affects the ability of the parties to pay, the trial judge may deviate from this formula.
The judgment, insofar as it gives effect to the antenuptial agreement, is affirmed. The denial of alimony to plaintiff is reversed as are the allocations of medical expenses and counsel fees. This matter is remanded to the Chancery Division for reconsideration of these issues as provided in this opinion. We do not retain jurisdiction.
NOTES
[1] While N.J.S.A. 37:2-4, enacted in 1877, provides that "all contracts made between persons in contemplation of marriage shall remain in full force after such marriage takes place," no appellate case has construed the statute with respect to post-divorce rights. One case, Chaudry v. Chaudry, 159 N.J. Super. 566 (App.Div. 1978) discusses the post-divorce effect of such an agreement under Pakistani law but does not address the validity of such agreements in the context of divorce proceedings and especially under the Divorce Act, N.J.S.A. 2A:34-23. See also N.J. Title Guar. & Trust Co. v. Parker, 85 N.J. Eq. 557 (E. & A. 1915), concerning application of an antenuptial agreement in a post-divorce setting and holding that such an agreement may not generally be enforced in divorce proceedings occasioned by a cause not recognized in the jurisdiction where the agreement was executed. (Given the liberal evolution of divorce law in New Jersey in the past 70 years, there must be a reassessment of the principles enunciated in Parker especially since the advent of the 1971 Divorce Act).