256 N.J. Super. 484 (1992)
607 A.2d 675
JOAN ARGILA, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
CHARLES ARGILA, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 14, 1992.
Decided May 19, 1992.
*485 Before Judges MICHELS, HAVEY and CONLEY.
Michael J. Stanton argued the cause for appellant and cross-respondent Charles Argila (Schachter, Trombadore, Offen, Stanton & Pavics, attorneys; Michael J. Stanton, of counsel and on the brief).
*486 Jean R. Campbell argued the cause for respondent and cross-appellant Joan Argila (Wilentz, Goldman & Spitzer, attorneys; David M. Wildstein, of counsel; Noel S. Tonneman, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Charles Argila appeals and plaintiff Joan Argila cross-appeals from a judgment for counsel fees of the Chancery Division, Family Part, that directed defendant to pay plaintiff's attorneys Wilentz, Goldman & Spitzer, counsel fees in the amount of $55,250.
Briefly, in August 1987, plaintiff instituted this divorce proceeding by an order to show cause with temporary restraints in the Chancery Division  Family Part. As a consequence, the trial court enjoined defendant from entering the marital home and enjoined both parties and co-respondent, defendant's alleged paramour, from harassing, assaulting or threatening each other or dissipating the marital assets. Plaintiff then filed a complaint for divorce on the grounds of extreme cruelty, adultery and physical abuse. In October 1987, the trial court issued a pendente lite order (1) again enjoining plaintiff, defendant and co-respondent from harassing each other; (2) directing defendant to pay $300 per week in pendente lite support for plaintiff and the three minor children born of the marriage; (3) directing defendant to maintain certain insurance and pay other expenses; (4) setting visitation, and (5) ordering defendant to permit plaintiff to inspect certain financial records and to pay a $1,500 retainer for plaintiff's accountant.
Over approximately the next two years, the parties engaged in extensive discovery proceedings. By November 1988, the parties reached a settlement agreement regarding custody and visitation of the minor children, which was incorporated into a Final Judgment for Custody and Visitation. Plaintiff was given sole physical, residential and legal custody of the three *487 minor children. Thereafter and throughout 1989, numerous motions seeking an increase in the pendente lite support and enforcement of the court's prior orders and judgment were filed. In November 1989, the trial court entered a case management order compelling defendant to provide certain discovery and documents relating to his numerous medical and real estate partnerships and other financial investments. After several court appearances, the parties resolved all issues regarding the property settlement, with the exception of counsel fees. In April 1990, the oral settlement agreement was placed on the record, and finally, in October 1990, a written agreement incorporating the settlement was executed.
The settlement agreement provided plaintiff in part with essentially the more liquid assets, such as IRAs, bank accounts, investments, valued at $260,000 of which $166,000 is from defendant's IRA; the marital home, valued at $500,000 by plaintiff and $645,000 by defendant and subject to a $245,000 mortgage; her automobile, and most of the furnishings. Defendant retained his medical practice valued at $453,000 by plaintiff and $209,000 by defendant; his Porche & Thunderbird automobiles, and other substantial real estate and medical partnership interests and investments. Additionally, plaintiff alleges that defendant receives $50,000 to $60,000 from his pension and profit sharing plan, and $10,000 to $20,000 in tax refunds. The agreement further provided plaintiff with $70,000 per year in alimony until April 30, 1994, and $60,000 thereafter, and child support of $12,000 per year for each of their children.
Pursuant to the settlement agreement, the parties were to submit to the trial court written certifications regarding counsel fees. In May 1990, plaintiff filed voluminous certifications of services, including those of David M. Wildstein, Esq. and Robert J. Chalfin, CPA, in which plaintiff requested $121,378.56 in counsel fees and an additional $10,819.65 in expert appraisal fees. Defendant and plaintiff exchanged additional certifications, and in October 1990, plaintiff submitted a supplemental *488 certification in which she requested an additional $10,222.35 in counsel fees and $3,000 in expert fees, for a total of $149,183.14. After reviewing the documents, Judge Ross in the Chancery Division, Family Part, found:
After an in-depth and extensive review of the certifications supplied, it is apparent to this court that plaintiff's charge of more than $149,000.00 is not a reasonable amount.
Due, in part, to the number of conferences, the large number of personnel involved in this matter and the apparent overuse of certain staff members this court finds the plaintiff's counsel fee request to be inflated. Therefore, this court sets plaintiff's counsel fees at $85,000.00.
Said figure was derived at by noting that, although this, matter was extremely complex, the plaintiff has not met its burden of proving to the court that said request has met and satisfied the reasonableness standard.
It is for the above reasons that this court sets the lower counsel fee.
The trial court then considered to what extent defendant was responsible for plaintiff's fees, commenting:
When deciding to what extent a party is entitled to contribution from the other party for counsel fees and costs, courts have focused on many factors. The three most often articulated factors include: (a) the applicant's needs; (b) the financial ability of the spouse to pay; and (c) the applicant good faith in instituting or defending the action.
In varying degrees, courts have also noted these additional factors: (a) the complexity of the case; (b) the equality of financial positions between the parties; (c) the spouses' respective share in the equitable distribution of the marital assets; and (d) the applicants' share in the equitable distribution process and the liquidity and value thereof.
Additionally, the fact that the wife had received a fair share of the marital property does not preclude the trial court from awarding counsel fees and costs. Shaffer v. Shaffer, 154 N.J. Super. 491 [381 A.2d 1221] (App.Div. 1977). If the wife's share of the marital property is substantial, she presumably would have ample funds to pay her respective litigation expenses and that circumstances could play a part in deciding whether and how much of a counsel fee should be awarded. Id. at 295 [495, 381 A.2d 1221].
After a review and a comparison of the parties' respective shares in the equitable distribution of the parties' assets, this court finds that the defendant shall be responsible for sixty-five percent (65%) of the plaintiff's counsel fees. The defendant shall be responsible for $55,250.00 of the $85,000.00 amount set by this court.
More specifically, the defendant's ability to pay and his share of the marital assets decisively place him in a superior position to carry a portion of the plaintiff's counsel fee burden.

*489 Additionally, the defendant maintains a distinctive ability to pay due, in part, to his future earning powers. In comparison, the plaintiff has "fixed" monthly "earnings" in the form of alimony and child support.
Further, the defendant and the plaintiff were both afforded assets through equitable distribution which will allow for the payment of their respective counsel fees.
In conclusion, this court directs the defendant to share in the plaintiff's counsel fees in the amount of $55,250.00 which represents a sixty-five percent (65%) share of the total $85,000.00 set by this court. Said sum to be payable within 90 days from the date of this order.
Thereafter, in March 1991, the trial court awarded plaintiff $55,250 for counsel fees. Defendant appealed and plaintiff cross-appealed.
Defendant seeks a reversal of the judgment for counsel fees, contending that the trial court's "award of counsel fees was excessive both in terms of the total fee allowed and the percentage to be paid by the defendant and therefore constitutes an abuse of discretion." Defendant contends that the $85,000.00 level set by the trial court was unreasonable given plaintiff's financial position and her bad faith. He argues that plaintiff's requests for fees were inflated due to: (1) double billing; (2) extensive conferences among staff; (3) extraordinarily high number of telephone conferences between the attorneys, staff and plaintiff; (4) extraordinary amount of time spent for trial preparation by associates who were not involved when the matter was called to trial; (5) double billing regarding the certification of services; (6) paralegal and support staff fees of $12,488.00, and (7) costs of overhead, such as secretary overtime, meeting expenses, Lexis, etc.
Plaintiff contends that the trial court abused its discretion by reducing the award to $85,000.00, claiming that the trial court's decision was based on "unreported reasons" and was "not supported by the record." Plaintiff further contends that "the trial court abused its discretion by compelling the defendant to pay only 65% of plaintiff's counsel fees" given defendant's bad faith, the discrepancy in earning capacity between the parties and the trial court's failure "to adequately consider the nature and extent of the distributed assets." Plaintiff argues that the *490 additional expense of any "de minimis overlap of attorney time" was "insignificant" from a cost effective perspective and that the complexity of the case necessitated delegation.
We have carefully considered the record and the arguments presented and are satisfied that the trial court properly exercised its discretion by reducing the amount of counsel fees to $85,000 and awarding plaintiff 65% of that reduced figure or $55,250. Moreover, we are satisfied that all of the issues of law raised are clearly without merit. R. 2:11-3(e)(1)(E). Accordingly, we affirm the judgment under review substantially for the reasons expressed by Judge Ross in his letter opinion of February 14, 1991.
Moreover, we are satisfied that the record supports the trial court's conclusion that plaintiff's request for counsel fees was unreasonable and excessive and that the trial court properly reduced the amount of the total fee to $85,000. When determining the extent of an award "where the wife, by virtue of her need, seeks to compel the husband to pay all or part of her counsel fees, it is necessarily implicit that there may be allowed only such fees as represent reasonable compensation for such legal services performed as were reasonably necessary in the prosecution or defense of the litigation." Mayer v. Mayer, 180 N.J. Super. 164, 169, 434 A.2d 614 (App.Div.), certif. denied, 88 N.J. 494, 443 A.2d 709 (1981). In Mayer v. Mayer, supra, 180 N.J. Super. at 169, 434 A.2d 614, we explained that:
The fee should not be fixed by simply taking the total time assertedly expended by counsel, without critical review and examination of the nature and extent of the services, and multiplying the total number of hours by the charges fixed in a retainer agreement made between the wife and her attorney  to which charges the husband never consented or agreed. Cf. Swanson v. Swanson, 48 Ohio App.2d 85 [2 O.O.3d 65] 355 N.E.2d 894, 899 (1976).
Moreover, we believe that the services encompassing the conferences (personal and telephonic) with plaintiff-client  aggregating approximately 30% (almost one-third) of the total time billed under the first application  should be scrutinized most carefully, both as to the time actually consumed and their reasonable necessity vis-a-vis the performance of legal services. As has been so aptly stated:

*491 There comes a time when counsel is obligated to limit such conferences or accept the fact that he cannot always expect full remuneration for the time so consumed. This is particularly true in divorce actions. Some litigants will virtually take over counsel's office and absorb most of his time if permitted by counsel to do so. [DeWitt v. DeWitt, 86 S.D. 59, 64, 191 N.W.2d 177, 180 (1971)].
R. 4:42-9(b), which deals with counsel fees, specifically provides, in part, that "the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated in the RPC 1.5(a)." RPC 1.5(a) enumerates the following factors:
(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the result obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
(8) whether the fee is fixed or contingent.
Here, the rates for counsel fees charged by Wilentz, Goldman & Spitzer ranged from $250 per hour to $95 per hour. Similarly, the rates charged for paralegal fees ranged from $60 per hour to $45 per hour. Despite otherwise extensive certifications of services provided by plaintiff, no information was included in these certificates which would establish the prevailing market rate for the locality of counsels' office  the vicinity of Oakhurst, New Jersey. Additionally, regarding the qualifications of the paralegals involved, the certifications of services failed to provide any information as required by R. 4:42-9(b), other than the paralegals' rates and time spent on the matter. R. 4:42-9(b) specifically requires that in addition to the time spent and hourly rate, the certification must include "a summary of the paraprofessionals' qualifications" to ensure that "[n]o portion of any fee allowance claimed for attorney's services ... duplicate in any way the fees claimed by the attorney for *492 paraprofessional services rendered to the client." Further, the rates were applied uniformly to all tasks involved. While there is no requirement in New Jersey that counsel differentiate their rates according to the complexity of the tasks involved, such practice may be prudent billing judgment in matrimonial matters, and especially where, as here, the total hours expended reach such an inordinately high level. Furthermore, our courts must carefully consider the rates charged when a fee request is made, especially where, as here, a defendant who has no voice in the selection of counsel or negotiating their rate is or may be required to pay all or a portion of that fee.
The divorce action admittedly involved somewhat complex issues. The complaint for divorce alleged extreme cruelty, adultery, and physical abuse. Defendant had interests in both a medical practice and numerous real estate ventures that necessitated detailed evaluation by expert appraisers. The record also indicates a reluctance by the parties to voluntarily submit to or permit discovery and a protracted settlement process. Indeed, the complaint for divorce was filed in August 1987, and a custody and visitation agreement was not entered until November 1988 and the property settlement was reached almost two years later in October 1990. Despite the somewhat difficult and complex nature of the case, the length of time involved, and the conduct of both parties, the counsel fees requested by plaintiff did not meet the test of reasonableness. Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971); Mayer v. Mayer, supra, 180 N.J. Super. at 169-70, 434 A.2d 614; RPC 1.5(a).
In determining the reasonableness of any fee award, "[t]he initial focus in the calculus is appropriately directed to the time expended in pursuing the litigation." Singer v. State, 95 N.J. 487, 499, 472 A.2d 138, cert. denied, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 64 (1984). However, "time expended is only one of the factors to be considered." Swanson v. Swanson, 48 Ohio App.2d 85, 91, 2 O.O.3d 65, 69, 355 N.E.2d 894, 899 (1976); see Mayer v. Mayer, supra, 180 N.J. Super. at 169-70, 434 A.2d *493 614; see also Neiman v. Neiman, 7 Ohio App.3d 172, 173, 7 OBR 218, 454 N.E.2d 967, 969 (1982); Pressler, Current N.J. Court Rules, Comment 3 on R. 4:42-9(b) (1992) at 1011. See generally 24 Am Jur 2d Divorce and Separation § 617 (1983). In matrimonial actions, more so than most other areas in which counsel fees are awarded, the expenditure of attorney time is of less importance. See generally Allan E. Korpela, L.L.B., Annotation Amount of Attorneys' Fees in Matters Involving Domestic Relations, 59 A.L.R.3d 152, 159 (1974). As Judge Pressler comments, "[t]he purpose of the amendment [to our fee provision] was to provide a more accurate catalogue of the factors to be considered by the court in fixing the fee and to deemphasize the factor of the attorney's time spent, which is in itself often an unreliable guide but too often overemphasized by the court." Pressler, Current N.J. Court Rules, Comment 3 on R. 4:42-9(b) (1992) at 1011; cf. In re Trust of Brown, 213 N.J. Super. 489, 493, 495, 517 A.2d 893 (Law Div. 1986). As the Ohio Appeals Court stated in Swanson v. Swanson, supra,
The value of services may be greater or less than that which would be reflected by a simple multiplication of an hourly rate by time expended. We think that in divorce cases, as in probate cases, "[t]o employ the timeclock method alone as the test for legal services * * would certainly be improper and result in completely inadequate fees in large estates and disproportionately high fees in modest ones." In re Augar (1963), 39 Misc.2d 936, 242 N.Y.S.2d 84, 89, aff'd, 19 A.D.2d 861, 245 N.Y.S.2d 358 [(1963)].
Indeed, it is recognized that domestic relations cases tend to consume a considerable amount of time and that counsel must generally realize that he cannot always expect full compensation for the time so consumed. E.g., DeWitt v. DeWitt (1971), 86 S.D. 59, 191 N.W.2d 177; Shuman v. Shuman (1961), 195 Pa.Super. 155, 170 A.2d 602. [48 Ohio App.2d at 92, 2 O.O.3d at 69, 355 N.E.2d at 899].
The extent of the hours expended by counsel in this case was neither reasonable nor justified and, therefore, the trial court properly reduced Wilentz, Goldman & Spitzer's counsel fees to $85,000.
Additionally, we are satisfied that the trial court properly determined to award counsel fees to plaintiff. In making the determination as to whether counsel fees should be granted, *494 our Supreme Court held in Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971), that:
Under our practice, the award of counsel fees and costs in a matrimonial action rests in the discretion of the court. Handelman v. Handelman, 17 N.J. 1, 7 [109 A.2d 797] (1954); Morrissey v. Morrissey, 1 N.J. 448 [64 A.2d 209] (1949), overruled on other grounds, Meeker v. Meeker, 52 N.J. 59 [243 A.2d 801] (1968); Lasasso v. Lasasso, 1 N.J. 324 [63 A.2d 526] (1949); Wheeler v. Wheeler, 48 N.J. Super. 184, 191-195 [137 A.2d 84] (App.Div. 1957); R. 4:42-8; R. 4:42-9(a)(1). In deciding whether a wife is entitled to counsel fees and costs, our courts focus on several factors, including the wife's need, the husband's financial ability to pay and the wife's good faith in instituting or defending the action. 3 Nelson, Divorce and Annulment (2d ed. 1945), at pp. 215-220. Cf. Capodanno v. Capodanno, 58 N.J. 113 [275 A.2d 441] (1971); Khalaf v. Khalaf, 58 N.J. 63 [275 A.2d 132] (1971). Those factors being met, it is the policy of our law that counsel fees and costs in matrimonial actions are properly the obligation of the husband and he should be compelled to furnish them to the wife. In this respect, counsel fees and costs are not unlike other categories of "necessaries," which the law compels the husband, the usual repository of family finances, to furnish to the wife. 3 Nelson, supra, at pp. 216, 231-32. See generally Annot., Husband & Wife  Legal Services  Divorce, 25 A.L.R. 354 (1923); 41 C.J.S. Husband and Wife § 60, p. 526 (1944).
A spouse's need is determined by his or her income and available capital assets. See D'Onofrio v. D'Onofrio, 200 N.J. Super. 361, 371, 491 A.2d 752 (App.Div. 1985). A disparity in income "would suggest some entitlement ... to a fee allowance." Lavene v. Lavene, 148 N.J. Super. 267, 277, 372 A.2d 629 (App.Div.), certif. denied, 75 N.J. 28, 379 A.2d 259 (1977); see also Jobe v. Jobe, 197 N.J. Super. 596, 603, 485 A.2d 1059 (App.Div. 1984). However, "in determining whether plaintiff should be required to contribute to her own counsel fee, the amounts and liquidity of the parties' respective assets," should also be considered. Lavene v. Lavene, supra, 148 N.J. Super. at 277, 372 A.2d 629. Thus, the equitable distribution of marital property is an important factor in determining the award of counsel fees. See D'Onofrio v. D'Onofrio, supra, 200 N.J. Super. at 371, 491 A.2d 752; Pascarella v. Pascarella, 165 N.J. Super. 558, 565, 398 A.2d 921 (App.Div. 1979); Shaffer v. Shaffer, 154 N.J. Super. 491, 495, 381 A.2d 1221 (App.Div. 1977).
*495 Here, the record shows that defendant, a vascular surgeon, had a gross income in 1988 of $305,748. Additionally, his gross income from his medical practices similarly exceeded $300,000 in both 1987 and 1989. Plaintiff, on the other hand, was unemployed in 1988 and allegedly suffers from some physical problems. Further, plaintiff has a limited income in the form of alimony and child support whereas, as the trial court noted, "the defendant maintains a distinctive ability to pay due, in part, to his future earning capacity." Moreover, as part of the settlement agreement, defendant maintains his full interest in his numerous real estate investments and medical practice. Plaintiff received the marital home, and certain investments, IRAs, and bank accounts. These investments were valued at $260,000 of which approximately $166,000 is from defendant's IRA. While plaintiff did receive a substantial share of the property, some of which is in the form of liquid assets, and receives $106,000 in support, plaintiff adequately demonstrated need. Furthermore, the trial court properly concluded that defendant had a greater ability to pay. Consequently, the trial court properly awarded plaintiff 65% of the counsel fees of $85,000.
Affirmed.