288 N.J. Super. 217 (1996)
672 A.2d 210
DEBORAH T. PORITZ, ATTORNEY GENERAL OF STATE OF NEW JERSEY, AND NEW JERSEY STATE BOARD OF EXAMINERS OF MASTER PLUMBERS, PLAINTIFF-RESPONDENT,
v.
ARNOLD STANG, INDIVIDUALLY, AND TRADING AS ARNIE'S PLUMBING & HEATING, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 1996.
Decided March 6, 1996.
*219 Before Judges LONG and BROCHIN.
Charles Kannebecker argued the cause for appellant (Weinstein, Schneider & Kannebecker, attorneys).
Ressie L. Fuller, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Ms. Fuller, on the brief).
The opinion of the court was delivered by LONG, P.J.A.D.
The primary issue before us is whether the term "costs" as used in N.J.S.A. 45:1-25 includes investigative fees or whether it is limited to the kinds of items routinely assessed as court costs, for example, witness fees and printing costs. We think the more inclusive interpretation of the statute is the correct one and that investigative fees are within its contemplation.
For the purposes of this analysis, the facts of the case need not be detailed. It is sufficient to say that defendant was investigated by the State Board of Examiners of Master Plumbers and found to have engaged in the unlicensed practice of plumbing. After a bench trial he was fined $2500 and assessed $7308 in investigative expenses. Defendant challenges only the latter, contending that the statute precludes assessment of investigative costs. Alternatively, he argues that even if the statute allows such costs, the State failed to prove the amount and reasonableness of what was incurred.
N.J.S.A. 45:1-25 provides:
Any person violating any provision of an act or regulation administered by a board shall, in addition to any other sanctions provided herein, be liable to a civil penalty of not more than $2,500.00 for the first offense ... [and] the payment of costs for the use of the State. (emphasis added).
*220 Defendant, citing U.S. Pipe & Foundry Co. v. United Steelworkers of America, 37 N.J. 343, 355, 181 A.2d 353 (1962), argues that "costs" is a term of art and
comprise principally certain statutory allowances, amounts paid the clerk in fees, and various other specified disbursements of counsel including sheriff's fees, witness fees, deposition expenses and printing costs.
See also Fagas v. Scott, 251 N.J. Super. 169, 207, 597 A.2d 571 (Law Div. 1991), ("litigation costs" include xeroxing, messenger services, filing fees, and postage "because they are of the type [of costs] that an attorney would normally bill a fee-paying client.") Underpinning this argument is the principle that ordinarily, "all litigants must bear the cost of enforcing their rights through litigation." Van Horn v. City of Trenton, 80 N.J. 528, 533, 404 A.2d 615 (1979).
According to defendant, if the Legislature had intended an exception to this rule and wished to include investigative fees within the scope of "costs" in N.J.S.A. 45:1-25, it knew how to do so and would have done so explicitly as it has in other statutes. See Velli v. Rutgers Casualty Ins. Co., 257 N.J. Super. 308, 312, 608 A.2d 431 (App.Div.), certif. denied, 130 N.J. 597, 617 A.2d 1220 (1992). For example, N.J.S.A. 39:6A-34 provides that the demanding party "shall be assessed court costs and other reasonable costs ... including attorney's fees [and] investigation expenses." Likewise, N.J.S.A. 56:8-14.1 entitles county and municipal offices of consumer affairs to "reasonable costs ... including investigative and legal costs."
While this argument is appealing, it fails to account for the decision of our Supreme Court in In re Polk License Revocation, 90 N.J. 550, 449 A.2d 7 (1982). There, the Court affirmed the trial judge's assessment of investigative fees pursuant to N.J.S.A. 45:1-25, the statute under review here, against a defendant who violated the laws regulating the practice of medicine.
To be sure, the specific issue raised here was not directly addressed in Polk. However, the court plainly accepted investigative fees as a component of statutory costs in its analysis of the *221 pro-ration issue before it. In rejecting the attack on the imposition of "investigatory costs," the Court observed that N.J.S.A. 45:1-25 is "the statutory provision authorizing imposition of such costs." Polk, 90 N.J. at 577, 449 A.2d 7 (emphasis added).
Fourteen years have passed since Polk. During that period, the Legislature has amended N.J.S.A. 45:1-25 once without changing the words "costs for the use of the State" or otherwise delimiting the meaning those words were given in Polk. Where statutory words have received a judicial construction, the Legislature is deemed to have used them in the sense thus ascribed to them. In re Keogh-Dwyer, 45 N.J. 117, 120, 211 A.2d 778 (1965). The Legislature is presumed to be thoroughly conversant with the judicial construction placed on its enactments. This is especially so where the statute has been amended in other particulars, as is the case here, without a change in the phraseology construed in the judicial decision. Quaremba v. Allan, 67 N.J. 1, 14, 334 A.2d 321 (1975). Applying these principles, we are satisfied that the trial judge properly construed N.J.S.A. 45:1-25 as including investigative fees.
It is here that we part company from him. We are not satisfied that he had before him an adequate record to undertake the kind of analysis required in determining the amount of investigative fees to be assessed. In our view, the approach to be utilized is analogous to that involved in the awarding of counsel fees. First, a record must be developed as to the actual hours expended on the investigation, keeping in mind that actual time expended does not necessarily equate with reasonable time. See Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir.1980) ("[N]o compensation is due for nonproductive time. For example, where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.")
Second, the judge must determine the reasonableness of the hourly rate employed. This will depend on the rate prevailing in the community for similar work. Copeland, supra, 641 F.2d at 892; Argila v. Argila, 256 N.J. Super. 484, 491, 607 A.2d 675 *222 (App.Div. 1992). The community here is that of government investigations. Because government investigators are salaried and not hourly wage earners, the method by which the hourly rate has been determined by the agency must be set forth with specificity. Only by analyzing a detailed breakdown of how the rate was calculated can the judge determine its rationality.
After multiplying the hours by the rate, the judge will have to assess the overall reasonableness of the costs by considering the expected return to the State and the interest to be vindicated. See Rendine v. Pantzer, 141 N.J. 292, 336, 661 A.2d 1202 (1995). Here, for example, the potential penalty was $2500 (this was a first offense) for which nearly three times that amount in investigative costs were incurred. The judge must determine whether this ratio is an acceptable one.
In terms of the interests to be vindicated, protection of the public is the polestar. Thus, for example, a greater investigative fee would be justified as reasonable to remove a grossly negligent surgeon from practicing than might be the case where a real estate appraiser or a landscape architect, who was performing adequate services, is alleged to have misrepresented his license status.
In the final analysis, after determining what investigative costs actually were incurred, the judge must weigh and balance the State's interests in vindicating the statutory scheme and in protecting the public, against a defendant's interest in being assessed only an objectively reasonable amount of investigative fees in connection with a violation.
In this case, that kind of analysis was not performed because no evidence was produced on some of these issues. Because we have clarified the nature of the inquiry for the first time in this opinion, we reverse and remand the case to the trial judge for further proceedings. We leave it to him to determine what proceedings are appropriate to establish a record adequate to undergird the required analysis.
Affirmed in part; reversed and remanded in part.