**UNITED STATES of America**
v.
**Floretta G. SMITH, Appellant.**
**No. 16752.**

United States Court of Appeals
Third Circuit.

Argued Feb. 19, 1968.

Decided July 11, 1968.

Ralph J. Kmiec, Kmiec & Palumbo, Camden, N. J., for appellant.

Kenneth P. Zauber, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., Donald G. Targan, Asst. U. S. Atty., on the brief), for appellee.

Before KALODNER, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

The United States, after paying a survivor's annuity of $83 monthly under the Civil Service Retirement Benefits Act [1] to Mrs. Floretta G. Smith as the surviving wife of James Smith, a deceased federal employee, brought this action to recover $1,845.10, the amount it had paid out, claiming that she was not Smith's legal widow because they had been divorced. Mrs. Smith counter-claimed for subsequent payments which the United States had withheld and sought a declaratory judgment that she was entitled to continued benefits under the Act. The district court after a nonjury trial rendered judgment for the United States,[2] and Mrs. Smith has appealed.

The Smiths were married in 1952 and lived together in Woodbury, New Jersey, until December, 1956, when Smith moved to Florida, where he resided until his death in 1962. Mrs. Smith did not follow her husband to Florida, but continued to live in Woodbury and apparently never saw him after his removal.

On January 28, 1960, Smith instituted an action for divorce in Pinellas County, Florida, on the ground of desertion. Mrs. Smith did not appear and an ex parte decree of divorce was entered against her on April 27, 1960.

On February 9, 1962, two years after the divorce decree was entered, James Smith died. He had been receiving annuity payments under the Act,[3] and when Mrs. Smith learned later that year of his death she applied for a survivor's annuity.[4] Her application was approved and she was paid benefits for the period from Smith's death in February, 1962 through November, 1963. The United States then decided that she was not qualified to receive the benefits as Smith's surviving wife and stopped payments to her. More than a year and a half later, on June 21, 1965, it brought the present action to recover the payments already made.

The Act provides:

"(1) If an employee * * * dies after having retired * * * and is survived by a wife or husband to whom the employee * * * was married at the time of retirement, such wife or husband shall be paid an annuity * * * unless the employee * * * has notified the [Civil Service] Commission in writing at the time of retirement that he does not desire his wife or husband to receive such annuity.

"(2) An annuity computed under this subsection shall commence on the day after the retired employee * * * dies * * *."[5]

The record does not show the date of Smith's retirement, but the United States makes no claim that Mrs. Smith was not his wife at that time; it asserts only that she was not his wife on the date of his death. Although the Act may perhaps seem literally ambiguous,

---

1. The provisions of the Act were recodified, renumbered and amended by the Act of September 11, 1967, P.L. 90-83, 81 Stat. 213. The substance of the provisions with which we are concerned remained the same. The applicable provisions now appear in 5 U.S.C. §§ 8331-8348.

2. The opinion of the district court, which contains its findings of fact and conclusions of law, is unreported.

3. The record does not show whether his retirement was by reason of age (5 U.S.C. §§ 8335-8336, 8338), or by reason of disability (5 U.S.C. § 8337).

4. 5 U.S.C. § 8341(b).

5. 5 U.S.C. § 2260(a), (1964 ed.). The provision presently appears in 5 U.S.C. § 8341(b) in language substantially identical except for the substitution of "spouse" for "husband or wife".

its clear meaning is that to obtain a survivor's annuity a spouse to whom a retired employee was married at the time of his retirement must also be his wife at the time of his death.[6]

We need not here decide whether Mrs. Smith's status as the surviving spouse of James Smith is to be determined by the law of New Jersey, the place of her domicil at the time of his death, or by the law of Florida, the place of his domicil. For as the case has been presented to us Mrs. Smith attacks the divorce on the ground that it is not entitled to full faith and credit because she did not receive actual notice of the divorce proceedings and that the attempts made to notify her fell below the standard of due process, an argument which presents questions of federal and not state law.

Florida law authorizes service on nonresident individuals to be made by publication once a week for four weeks in a newspaper published in the county where the suit is brought.[7] Its statute requires that before such service is effected the plaintiff must file a sworn statement setting forth the reasons why personal service could not be made, and stating that diligent search and inquiry have been made to discover the residence of the person to be served.[8] After the statement is filed the judge or clerk of court is required to mail notice of the action to the defendant at the address given in the sworn statement and to note the date of mailing on the docket sheet.[9]

The facts relating to service on Mrs. Smith have the unusual quality which stirs litigation. On January 18, 1960, ten days before he filed his complaint in divorce in Florida, Smith mailed a letter to Mrs. Smith by registered mail with return receipt requested stating that he required her correct mailing address for certain legal matters which he did not disclose. She received this letter and acknowledged its receipt by signing the return receipt card on January 20, 1960. The letter was addressed to her "c/o American Apts., Myrtle Ave., Woodbury, N. J." Eight days later, on January 28, Smith filed his complaint in divorce and therein alleged that he had made diligent search to ascertain the residence of the defendant and then stated her residence address as it had appeared in the registered letter for which she had acknowledged receipt.

On the day the complaint was filed the clerk of the court mailed to the defendant "Care of American Apts., Myrtle Ave., Woodbury, N. J." a notice that the suit had been brought and requiring her to answer by March 2, 1960. On January 31, February 7, 14 and 21, 1960, the clerk advertised notice of the suit in a newspaper of general circulation pub-

---

6. See Sen.Rep.No. 2642, 84th Cong., 2d Sess., accompanying the Federal Executive Pay Act of 1956, 1956-2 U.S.Code Cong. & Admin.News, pp. 3725, 3735. The Act set up the basic statutory retirement program as it exists today.

The general rule is that a surviving spouse means one who was legally married to the decedent at the time of his death. See United States v. Robinson, 40 F.2d 14 (5 Cir. 1930); In re Atwood's Trust, 262 Minn. 193, 114 N.W.2d 284 (1962); see also Cain v. Secretary of Health, Education and Welfare, 377 F. 2d 55 (4 Cir. 1967).

Congress has in some instances spelled out a definition of "widow." For example, the Civil Service Retirement Benefits Act itself in dealing with the death of an employee before retirement provides that: " 'widow' means the surviving wife of an employee * * * who—

(A) was married to him for at least 2 years immediately before his death * * *." 5 U.S.C. § 8341(a) (1). The Social Security Act provides "An applicant is the * * * widow * * * of [an] individual if * * * the courts of the State in which he was domiciled at the time of his death * * * would find that such applicant and such insured individual were validly married * * * at the time he died." 42 U.S.C. § 416 (h).

7. Fla.Stat.Annot. §§ 49.021, 49.10. Florida's procedural laws were recodified, renumbered and amended by Fla.Laws 1967, ch. 67–254. The amendments did not affect the substance of sections here involved.

8. Fla.Stat.Annot. §§ 49.031, 49.041.

9. Fla.Stat.Annot. § 49.12.

lished in St. Petersburg, Pinellas County, Florida.

Mrs. Smith did not file an answer and as a result a decree pro confesso was entered against her on March 24, 1960 and the case proceeded ex parte and was heard before a master on April 27, 1960. Smith's registered letter dated January 18, 1960, was offered in evidence before the master together with Mrs. Smith's return receipt card. Smith identified the return receipt card as bearing her signature and testified that the address on the letter was the place of her current residence. On the same day on the recommendation of the master a final decree of divorce was entered.

Unfortunately the Florida statute does not require that the clerk's notice of the suit be sent by registered or certified mail. At the trial of the present action in the district court Mrs. Smith testified that at the time she received her husband's letter dated January 18, 1960, she did not reside at the American Apartments on Myrtle Avenue in Woodbury, New Jersey. She claimed that there was no apartment so named and that in fact she lived at Woodbury Terrace Apartments on Myrtle Avenue in Woodbury. Moreover, she testified that in the eight day interval between the time when she received the letter and the clerk's notice of the Florida suit was sent she had moved to another section of Woodbury, a small town which in 1960 had a population of 12,453. She testified that she left a forwarding address, but never received the clerk's notice of suit.

The district judge in his findings of fact and conclusions of law found that Mrs. Smith received Smith's letter dated January 18, 1960 while she resided at Woodbury Terrace Apartments, even though it was addressed to her at the American Apartments, and that the clerk's notice also directed to her there, was sent by regular mail, but that in the interim she had moved to another street, leaving a forwarding address for her mail. He stated that her testimony that she never received the clerk's notice neutralized the presumption of delivery in due course, but that since the Florida records did not show that it had been returned unclaimed a further inference was permissible that it was not returned and that as a matter of law the Florida courts would properly presume that proper delivery had in fact been made. The district judge, however, went on to say that "while defendant may not have been in actual receipt in fact of the notice of the Florida suit * * * such notice as was given was in strict compliance with the laws and procedures of the State of Florida and must, therefore, be accorded full force and effect consistent with the full faith and credit mandate of the federal law."

It will be seen that the district judge made no direct finding whether or not Mrs. Smith received actual notice of the Florida suit, although he did find that the Florida court would be justified in finding that she had received notice. Thus, we shall assume that she did not in fact receive notice. On this assumption we must consider the effect a failure to receive notice would have on her claim that she was denied due process of law.

■ It is, of course, now settled beyond question that because it deals with the marital status a decree of divorce is not an in personam judgment, and when obtained in a state of plaintiff's but not defendant's domicil, is entitled to compulsory recognition in other states even though there was constructive service of process and the defendant did not appear.[10]

---

10. Williams v. State of North Carolina (I), 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942); Williams v. North Carolina (II), 325 U.S. 226, 65 S.Ct. 1092, 89 L. Ed. 1577 (1945); Atherton v. Atherton, 181 U.S. 155, 21 S.Ct. 544, 45 L.Ed. 794 (1901). See 3 Freedman, Law of Mar- riage and Divorce in Pennsylvania, §§ 785, 790 (2d ed.1957). See also Pennoyer v. Neff, 95 U.S. 714, 734, 24 L.Ed. 565 (1877); Maynard v. Hill, 125 U.S. 190, 209–210, 8 S.Ct. 723, 31 L.Ed. 654 (1888).

██ Constructive service of process usually is made on an absent defendant by publication in a local newspaper, but since realistically the effectiveness of publication as notice is at best dubious, further efforts to give notice are required where practicable.[11] There has therefore been increasing recognition of the obvious utility which the mails afford for communication of personal notice.[12] Florida has adopted the use of the mails as a means of giving actual notice supplementary to the statutory advertisement in a Florida newspaper. Thus a sworn statement why personal service cannot be made is a condition precedent to service by publication, and the defendant's address must be set forth if known, and notice must be mailed by the clerk directly to the defendant at the address given in the sworn statement. Florida has relied on the presumption of delivery of the clerk's notice and looks to its return unclaimed as an indication to the plaintiff that the notice was not received. It would, of course, be preferable if the Florida statute had required that the notice be sent by registered or certified mail, and so provided some documentary evidence of the receipt of the notice. Such a safeguard is especially desirable in divorce cases, where the marital status of the citizen of another state may be affected. But we cannot say that the failure to require that the notice, so common in statutes providing for constructive service, be sent by registered or certified mail with a provision for return receipt card reduces the procedure below the level of due process.

In the famous case of Atherton v. Atherton, 181 U.S. 155, 21 S.Ct. 544 (1901), the Supreme Court held entitled to full faith and credit a divorce decree granted after service by publication on an absent and nonappearing spouse, where notice had been mailed to her at her last known address, although the court assumed, in the absence of proof, that she had not received actual notice of the proceedings. The only feature distinguishing *Atherton* from the present case is that there the decree was granted in the state of the "matrimonial domicil". Although Haddock v. Haddock, 201 U.S. 562, 26 S.Ct. 525, 50 L.Ed. 867 (1906), later held that the element of "matrimonial domicil" was crucial to the compulsory recognition in other states of an ex parte divorce, the Supreme Court in Williams v. State of North Carolina, 317 U.S. 287, 63 S.Ct. 207 (1942), overruled *Haddock* and held that "matrimonial domicil" was of no constitutional relevance. In overruling *Haddock*, the Supreme Court in *Williams* specifically approved the result in *Atherton*.[13] Neither *Haddock* and the doctrine of "matrimonial domicil" which it fashioned, nor its demise under *Williams*, affects in any way the approval in *Atherton* of substituted service by publication and notice mailed to a defendant's last known address even though it is not actually received. Indeed, the cases are many in which divorces have been held validly entered against nonappearing defendants whose exact whereabouts are unknown and who cannot therefore be given actual notice.[14]

██ The test under due process and under the full faith and credit clause is not whether the absent spouse actually receives notice, but rather whether the method used is one reasonably calculated

11. Mullane v. Central Hanover Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Schroeder v. City of New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962).

12. See Mullane v. Central Hanover Trust Co., 339 U.S. at 319, 70 S.Ct. 660: "However it may have been in former times, the mails today are recognized as an efficient and inexpensive means of communication. * * *"

13. 317 U.S. at 296–297, 63 S.Ct. 207.

14. See, e.g., Cikora v. Cikora, 133 Conn. 456, 52 A.2d 310 (1947); Contakos v. Contakos, 204 Pa.Super. 445, 205 A.2d 619 (1965). See also Ditson v. Ditson, 4 R.I. 87 (1856), cited with approval in Atherton v. Atherton, 181 U.S. 155, 166–167, 21 S.Ct. 544 (1901).

to give actual notice. While the present method may fall short of furnishing proof that actual notice was received and thereby fails to supply a basis for fresh efforts to give actual notice, we cannot say that it is not one reasonably calculated to give notice.

We therefore hold that the Florida decree effectually terminated the marriage of James and Floretta Smith.

The record does not disclose when Smith retired or whether his retirement was before or after the entry of the divorce decree. Nor does it reveal the extent of his retirement contributions or the effect on his estate of the decision by the United States that Mrs. Smith was not entitled to survivor's annuity payments. The parties themselves have not raised any contention that Mrs. Smith had any vested right or interest to survivor's annuity payments before Smith's death. Thus, Mrs. Smith has not sought to maintain a right to the survivor's annuity under the doctrine of "divisible divorce",[15] by which an order of support or decree of separate maintenance, whether entered before[16] or after[17] the divorce, survives even a valid divorce,[18] if the divorce was ex parte and the absent defendant did not personally submit to the jurisdiction of the divorce court.[19]

On this record, therefore, we need not decide whether or in what circumstances a divorced wife's interest in her deceased ex-husband's retirement benefits is a vested economic right which survives a valid divorce entered against her in the courts of a state in which she was not domiciled, in a proceeding in which she was not personally served and entered no appearance.

We therefore conclude that the defendant did not qualify for a survivor's annuity because the Florida decree validly terminated her marriage to James Smith.

The judgment of the district court will be affirmed.

15. See 3 Freedman, Law of Marriage and Divorce in Pennsylvania, § 785, pp. 1428–32 (2d ed.1957).

16. Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948); Kreiger v. Kreiger, 334 U.S. 555, 68 S.Ct. 1221, 92 L.Ed. 1572 (1948).

17. Vanderbilt v. Vanderbilt, 354 U.S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456 (1957); see also Armstrong v. Armstrong, 350 U. S. 568, 76 S.Ct. 629, 100 L.Ed. 705, (1956).

18. Cf. Esenwein v. Commonwealth ex rel. Esenwein, 325 U.S. 279, 65 S.Ct. 1118, 89 L.Ed. 1608 (1945).

19. Cf. Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451 (1948); see also Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552 (1951); Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948).