285 N.J. Super. 453 (1995)
667 A.2d 371
ALBERT F. CHESTONE, PLAINTIFF-APPELLANT,
v.
ROSE B. CHESTONE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1995.
Decided November 27, 1995.
*457 Before Judges KING, KLEINER and HUMPHREYS.
James R. Stevens argued the cause for appellant (Randall, Randall & Stevens, attorneys; Mr. Stevens, on the brief).
William C. Rindone, Jr. argued the cause for respondent (Liebowitz & Liebowitz, attorneys; Mr. Rindone, on the brief).
The opinion of the court was delivered by KLEINER, J.A.D.
Plaintiff Albert Chestone appeals from the trial court's order that he maintain his former spouse as survival beneficiary of his pension subsequent to and in spite of the court's order of divorce. Plaintiff is a retired federal employee and distribution of his pension benefits is governed by federal law. The issue before us is whether the trial court erred by refusing to apply relevant federal statutes.
In December 1976, plaintiff, while married to his first wife, retired after thirty years of service as a special agent with the Federal Bureau of Investigation. His federal pension had vested and upon retirement he began to receive about $3,000 per month as retirement benefits. Plaintiff's wife was designated as a survivor annuitant on that pension. To pay the deposit necessary for this designation, plaintiff's monthly benefits were reduced by approximately $1,000.
Plaintiff's wife died in 1980. Subsequent to her death, he met Rose E. Schmelz. Plaintiff and Schmelz developed a romantic relationship. In anticipation of their marriage, they entered into *458 an "Ante-nuptial Agreement," dated January 20, 1988. They were married on February 6, 1988.
The ante-nuptial agreement provided in part:
1. Each party accepts the provisions of any Last Will and Testament that may presently exist or hereafter be made by each of them in full discharge, settlement and satisfaction of any and all other right, title and interest he or she might otherwise have or acquire in each other's estate or property including, but not limited to his or her "marital share", pursuant to NJSA 3B:1-1 et seq. and more specifically this instrument is a waiver of our respective rights to elect against any Will made by the other.
........
3. In addition to the real property referred to above each party agrees that any asset owned by either party as of the date of the marriage shall remain the separate property of each such party.
In January 1990, plaintiff designated defendant as the survival annuitant of his pension. Plaintiff's monthly benefits were reduced accordingly. The election application bears the following condition on page one: "Important: You cannot change or cancel your election after we have received a valid application." The application states that there are multiple payment options available to the electing annuitant. The application also provides under the heading "Law and Regulations" that "[a] change in beneficiary may be made at any time and without the knowledge or consent of the previous beneficiary, and this right cannot be waived or restricted."
The parties separated on June 24, 1992. Plaintiff filed a complaint for divorce and defendant filed a counterclaim for divorce. The issues at trial were limited to (1) defendant's pretrial claim that she should be entitled to remain as the designated survivor annuitant on plaintiff's pension, and (2) defendant's demand that her counsel fees and accountant fees be paid by plaintiff. The trial judge reserved decision and rendered a written opinion. A dual judgment of divorce was entered on September 12, 1994. The judgment of divorce, encompassing the judge's conclusions, provided in part:
(1) The plaintiff shall continue to name the defendant as the survivor annuity beneficiary of the plaintiff's Civil Service Retirement System Pension and shall *459 take no action to remove the plaintiff as survivor annuity beneficiary. In the event the United States Office of Personnel Management requires additional documentation, both the plaintiff and defendant shall execute any and all documents to effectuate this determination.
(2) The plaintiff shall pay to attorneys for defendant, counsel fees and costs in the sum of $12,000, and $861.00 to [defendant's accountant].
Plaintiff's appeal raises four points of error:
POINT I
THE TRIAL COURT EXCEEDED ITS AUTHORITY BY NOT CONSIDERING JUDICIAL NOTICE OF APPLICABLE FEDERAL LAW.
POINT II
A PROPER APPLICATION OF THE APPLICABLE FEDERAL REGULATIONS EXCLUDES DEFENDANT FROM CONTINUING AS THE SURVIVOR ANNUITANT.
POINT III
THE TRIAL COURT HAS MISAPPLIED THE CONCEPT OF "GIFT" TO PLAINTIFF'S PENSION.
POINT IV
THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING DEFENDANT ATTORNEY'S FEES.
We conclude that the trial judge erred in his failure to apply and interpret the federal regulations that control plaintiff's federal Civil Service pension. We are therefore constrained to reverse that component of this appeal. Our decision renders plaintiff's argument in Point III as moot. Additionally we conclude that the trial court may have reached the decision awarding counsel fees and costs to defendant predicated upon an erroneous conclusion as to plaintiff's income. We therefore reverse the decision as to counsel fees and costs and remand the matter for reconsideration.

I
Prior to trial, plaintiff asserted that federal regulations applicable to retirement pensions preclude defendant's right to remain as a designated survivor annuitant subsequent to the dissolution of marriage. In response to plaintiff's federal-based arguments, the trial court's opinion stated:
Federal statutes do not apply within the scope of this courts' consideration, including those that discuss federal acceptance of a provision for equitable distribution *460 in a state divorce decree. This court's concern is equitable distribution on the state level; the federal government's disposition of its own matters based on this decree is of no consequence here.
Having concluded that federal regulations had no applicability to the divorce proceeding, the trial court concluded that the designation of defendant as beneficiary of plaintiff's civil service annuity amounted to an interspousal gift, and as such, the judge concluded that N.J.S.A. 2A:34-23 required the court to equitably divide the annuity. That conclusion was error because it ignores New Jersey and federal case law which holds that federal law may be applicable in certain instances to dissolutions of marriages and property distributions incident thereto. See, e.g., Biles v. Biles, 163 N.J. Super. 49, 54, 394 A.2d 153 (Ch.Div. 1978); McCarty v. McCarty, 453 U.S. 210, 220, 101 S.Ct. 2728, 2735, 69 L.Ed.2d 589 (1981).
Ordinarily, matters of domestic relations are left to the sole province of the states. See Biles, 163 N.J. Super. at 54, 394 A.2d 153; McCarty, 453 U.S. at 220, 101 S.Ct. at 2735. However the Supremacy Clause of the Constitution of the United States, U.S. Const. art. 6, cl. 2, mandates that state law is overridden where it does "major damage" to "clear and substantial" federal interests. Hisquierdo v. Hisquierdo, 439 U.S. 572, 581, 99 S.Ct., 802, 808, 59 L.Ed.2d 1 (1979). "The pertinent questions are whether the right as asserted conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition." Id. at 583, 99 S.Ct. at 809. We have enunciated our standard as requiring a determination whether the state law "presents an obstacle to the accomplishment and execution of the objection of the federal legislation...." Biles, 163 N.J. Super. at 54, 394 A.2d 153. In Biles, we held that the trial court's order permitting the satisfaction of alimony arrears from a husband's currently-paid pension benefits did not frustrate the objectives of the Employee Retirement Income Security Act. Id. at 56, 394 A.2d 153.
*461 The Third Circuit has recognized that application of federal law may be appropriate in the normally exclusive state domain of domestic relations. United States v. Smith, 398 F.2d 173, 178 (3rd Cir.1968).[1] Similarly, in construing a matrimonial decree which affected Federal Railroad Retirement Act rights, the United States Supreme Court concluded that invocation of the Supremacy Clause required that Congress have "positively required by direct enactment" that state law be preempted. Hisquierdo, 439 U.S. at 581, 99 S.Ct. at 808 (quoting Wetmore v. Markoe, 196 U.S. 68, 77, 25 S.Ct. 172, 175, 49 L.Ed. 390 (1904)). This requirement is met when Congress has identified a clear and substantial interest that is undermined by state action. Ibid. Where the intent of Congress is clear, a state court order will fail if its enforcement will frustrate a federal policy. Id. at 584, 99 S.Ct. at 809.
The proposition is evident based upon Hisquierdo and Biles that our courts must take judicial notice of relevant federal statutory schemes affecting property rights which are subject to equitable distribution. A review of the federal statutory scheme must also encompass a review of pertinent federal regulations enacted in aid of the federal statute. Associated East Mortgage Co. v. Young, 163 N.J. Super. 315, 320-21, 394 A.2d 899 (Ch.Div. 1978).
We conclude that the trial court was required to utilize a two-step analysis prior to equitably distributing property rights that were created by federal legislation. First, the trial court must determine the purpose of Congress in enacting a particular statute. The answer will be gleaned from the statutory language, the legislative history of the statute, and from federal regulations *462 enacted in aid of the legislation.[2] Second, the trial court must determine whether an order of equitable distribution would conflict with clear and substantial federal interests. Hisquierdo, 439 U.S. at 585, 99 S.Ct. at 810; McCarty, 453 U.S. at 232, 101 S.Ct. at 2741.
Here, the trial court erred when it refused to consider the federal statute and regulations constituting the Civil Service Retirement System. Although there exist no expressly stated interests behind the CSRS, the federal government certainly benefits from uniform and efficient administration of its employees' pensions. Furthermore, the effect of a pension to encourage retirement and prevent a logjam of promotions may be undermined. Errors at the state level that frustrate these interests must be reversed.

II
Administration of plaintiff's retirement benefits is governed by the Civil Service Retirement System (CSRS). 5 U.S.C. §§ 8331 to 8348. This system is made up of the Civil Service Retirement Benefits Act and its amendments, including the Civil Service Retirement Spouse Equity Act (CSRSEA), effective May 7, 1985. Administration of the CSRS is handled by the U.S. Office of Personnel Management (OPM). The OPM has promulgated an extensive scheme of regulations, 5 C.F.R. §§ 831.601 to .685, which, in conjunction with the CSRS, determines the treatment of survivor annuities of retired federal employees. OPM was not authorized to honor orders awarding survivor benefits until May 7, 1985, the effective date of the CSRSEA.
Prior to OPM's regulations, Congress rendered CSRS benefits exempt from legal process, except as provided for by federal law. *463 5 U.S.C. § 8346(a). As part of the CSRSEA amendments, Congress made provisions for former spouses of federal employees or retirees. Specifically, 5 U.S.C. § 8339(j)(5)(A) concerns the divorce of a retiree or employee. That subpart reads:
Any reduction in an annuity for the purpose of providing a survivor annuity for the current spouse of a retired employee or Member shall be terminated for each full month 
........
(ii) after the dissolution of the spouse's marriage to the employee or Member, except that an appropriate reduction shall be made thereafter if the spouse is entitled, as a former spouse, to a survivor annuity under section 8341(h) of this title.
Clearly, a former spouse's interest in a survivor annuity is destroyed upon divorce unless the requirements of § 8341(h) are met. Section 8341(h) provides that a former spouse is entitled to a survival annuity under the terms of "any decree of divorce ... or any court order ... incident to such decree."
Ordinarily, OPM must comply with court orders or decrees in connection with divorces of employees or retirees. 5 C.F.R. § 838.101. Therefore, a trial court's order to a retiree preventing him from removing his former spouse as a beneficiary of the retiree's survivor annuity would generally be binding on the OPM. However, this mandate is limited to court orders that qualify under the OPM regulations. 5 C.F.R. §§ 838.801 to .807 sets forth the requirements of a qualifying court order. If a court order does not qualify for OPM acceptance, the order cannot affect an employee annuity. 5 C.F.R. § 838.102.
5 C.F.R. § 838.802 provides:
(a) A court order awarding a former spouse survivor annuity under CSRS is not a court order acceptable for processing unless the marriage terminated on or after May 7, 1985.
(b) In the case of a retiree who retired under CSRS before May 7, 1985, a court order awarding a former spouse survivor annuity under CSRS is not a court order acceptable for processing unless the retiree was receiving a reduced annuity to provide a survivor annuity to benefit that spouse on May 7, 1985.
*464 Applying this subsection to the trial court's order in the present matter, the requirement of paragraph (a) is obviously satisfied. Plaintiff's marriage to defendant terminated on September 12, 1994, well after the May 7, 1985 cutoff date. However, examining paragraph (b), plaintiff clearly was not "receiving a reduced annuity to provide a survivor annuity to benefit [Rose] on May 7, 1985." Therefore, the trial court's order would not be acceptable for processing.
As noted, the judgment provided: "The plaintiff shall continue to name the defendant as the survivor annuity beneficiary of the plaintiff's Civil Service Retirement System Pension and shall take no action to remove the plaintiff as survivor annuity beneficiary." Although the divorce judgment did not precisely award the survivor annuity to defendant, the practical effect of the judgment was to grant to defendant the right to plaintiff's survival annuity and to do so irrevocably. We find that this practical effect is sufficient to bring the judgment within the scope of § 838.802(b).
We additionally note that 5 C.F.R. § 838.1004(d) is helpful to our analysis. That section generally applies to retirement benefits, not survival annuities. However, paragraph (d) applies expressly to former spouse annuities, defined as "a recurring benefit under CSRS that is payable to a former spouse after the ... retiree's death." 5 C.F.R. § 831.603. Therefore, the paragraph is applicable to plaintiff's survival annuity. It provides in pertinent part that a court order affecting a former spouse annuity is not a qualified court order if: (i) the marriage was terminated after May 7, 1985; (ii) the employee retired prior to May 7, 1985; and (iii) in the case of a post-retirement marriage, the annuitant had not elected to provide a survivor annuity for that spouse before May 7, 1985. We conclude that the divorce judgment is not qualified because prior to May 7, 1985, OPM has no authorization to honor such orders. Although the marriage of plaintiff and defendant occurred after OPM authorization, plaintiff retired prior to that event. Also, as of May 7, 1985, plaintiff had not elected for the *465 protection of defendant. The judgment of divorce therefore is not a qualified court order that OPM is authorized to honor.
We are additionally persuaded of the correctness of our conclusion by a recent decision of the Merit Systems Protection Board (MSPB), Nelson v. Office of Personnel Management, 59 M.S.P.R. 612 (1993), aff'd, 48 F.3d 1238 (Fed. Cir.1995).[3] The facts in Nelson are strikingly similar to those now before us. In Nelson, a married federal employee retired in 1979. Id. at 613. His wife died in 1984. Ibid. Nelson remarried in 1986 and elected an annuity reduction to provide a survivor annuity for his second wife. Ibid. Nelson subsequently divorced his second wife in 1990 and was ordered by the court to retain his second wife as his survivor annuitant. Ibid.
OPM refused to honor the state court's order on the grounds that: (1) the order dissolved a marriage that took place after May 7, 1985, when the OPM received statutory authorization to honor orders awarding survivor benefits, and (2) the marriage was to an annuitant who retired prior to OPM authorization. Id. at 614.
The MSPB found correctly that absent express authority, OPM may not honor a court order that requires a retiree to "continue to have his CSRS annuity reduced to provide survivor benefits" for a former spouse. Id. at 615. The MSPB predicated this conclusion on 5 U.S.C. § 8346(a) and 5 C.F.R. § 838.1004(d) which, when read in conjunction, provide that CSRS benefits are exempt from legal process unless the OPM has authority to honor an affecting court order. The MSPB stated that "Congress did not intend for the provisions of the CSRSEA that relate to the award of former spouse survivor benefits to apply to [Nelson] and those similarly situated." Ibid.
Persuaded by Nelson, we conclude that OPM has no actual authority to honor the trial court's order and as such that component *466 of the divorce judgment is a nullity.[4] Accordingly, we reverse that component of the judgment of divorce.

III
Defendant contends that a trial court's award of counsel fees and accountant expenses may be allowed in a matrimonial matter only as permitted by rule of court, a statute, or a contract.
R. 4:42-9(a)(1) provides:

In a family action, the court in its discretion may make an allowance ... on final determination to be paid by any party to the action, including if deemed to be just any party successful in the action, on any claim for divorce, nullity, support....
N.J.S.A. 2A:34-23 provides in part:
The court may order one party to pay a retainer on behalf of the other for expert and legal services when the respective financial circumstances of the party make the award reasonable and just. In considering an application, the court shall review the financial capacity of each party to conduct the litigation and the criteria for award of counsel fees that are then pertinent as set forth by court rule. Whenever any other application is made to a court which includes an application for pendente lite or final award of counsel fees, the court shall determine the appropriate award for counsel fees, if any, at the same time that a decision is rendered on the other issue then before the court and shall consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party.
A court should consider need, financial ability to pay, and the recipient's good faith when awarding attorney's fees. *467 Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971). The judge must also determine the extent of the award. Argila v. Argila, 256 N.J. Super. 484, 490, 607 A.2d 675 (App.Div. 1992). In making that determination "it is necessarily implicit that there may be allowed only such fees as represent reasonable compensation for such legal services performed as were reasonably necessary in the prosecution or defense of the litigation." Ibid. In Mayer v. Mayer, 180 N.J. Super. 164, 434 A.2d 614 (App.Div.) certif. denied, 88 N.J. 494, 443 A.2d 709 (1981), we wrote:
The fee should not be fixed by simply taking the total time assertedly expended by counsel, without critical review and examination of the nature and extent of the services, and multiplying the total number of hours by the charges fixed in a retainer agreement made between the wife and her attorney  to which charges the husband never consented or agreed.
[Id. at 169, 434 A.2d 614.]
"In determining the reasonableness of any fee award, `[t]he initial focus in the calculus is appropriately directed to the time expended in pursuing the litigation.'" Argila, 256 N.J. Super. at 492, 607 A.2d 675 (quoting Singer v. State, 95 N.J. 487, 499, 472 A.2d 138, cert. denied, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 64 (1984)). But the time expended is only one of the factors to be considered. Ibid. R. 4:42-9(b) provides that "all applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by RPC 1.5(a)." Those factors are:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer of lawyers performing the services;
(8) whether the fee is fixed or contingent.
[R.P.C. 1.5(a).]
*468 An award of counsel fees is within the discretion of the trial court. Williams, 59 N.J. at 233, 281 A.2d 273. However, unless an award represents an abuse of discretion, we ordinarily will not disturb that award on appeal. Fidelity Union Trust Co. v. Berenblum, 91 N.J. Super. 551, 561, 221 A.2d 758 (App.Div. 1960).
In our review of the record we note that plaintiff's annual income is approximately $38,000 and is comprised primarily of pension benefits. Although plaintiff also maintains a business, plaintiff testified that his business has operated at a loss for the past five years. Plaintiff's 1992 tax federal tax return included a $16,000 deduction for a business loss. Yet the trial judge concluded that plaintiff's income was $44,000. We are unable to discern how the trial court reached that conclusion. We also note that the trial court recognized that "not much financial information was submitted to the court" because the trial focused primarily on the survival annuity issue.
We find that the record demonstrates that defendant's income from her employment was approximately $30,000 per year. It is apparent that the trial court may have failed to consider that plaintiff's income was not disproportionate to defendant's income and that no evidence exists in the record to justify an award to defendant encompassing the entire expense incurred by defendant for attorney and accountant services.
Because the trial judge may have reached the counsel fee decision predicated upon an erroneous conclusion as to plaintiff's income, we reverse that award and remand that issue for reconsideration predicated upon the principles discussed in this opinion.
The component of the judgment of divorce prohibiting plaintiff from changing the survivor annuitant of his pension is reversed. The award of counsel fees and accountant expenses is reversed and remanded to the trial court for reconsideration.
NOTES
[1] The substantive holding in Smith has since been rendered obsolete by subsequent amendments to the Civil Service Retirement Benefits Act. We consider the principle enunciated in Smith, that New Jersey courts should consider federal law in disposing of marital assets in divorce proceedings where one spouse is entitled to a federal pension, a viable concept.
[2] The court may also review other legislation to discern the intent of Congress. For example, the trial court here was concerned with the Civil Service Retirement Benefits Act. A review of that legislation would have led to a review of the Civil Service Retirement Spouse Equity Act (CSRSEA), enacted in 1984.
[3] The Federal Circuit has classified its opinion as not citable as precedent.
[4] The briefs on appeal indicated that plaintiff intended to remarry and was desirous of naming his third wife as a survivor annuitant. At oral argument, we were advised that plaintiff has in fact remarried. Plaintiff provided the court at oral argument with a communication from the United States Office of Personnel Management dated September 5, 1995 providing in part:

This is in reply to your inquiry concerning survivor annuity benefits for your former and current spouses.
........
Rose is not eligible for a survivor benefit as a former spouse because your annuity was not reduced to provide a survivor benefit for her on May 7, 1985 {CFR 838.802(b)}.... We adjusted your annuity to eliminate the reduction for a survivor benefit effective October 1, 1994.
We denied a motion to supplement the record with this letter and include it for clarification purposes only.