716 A.2d 533 (1998)
315 N.J. Super. 1
Robert WHITFIELD, Plaintiff-Appellant,
v.
Margaret WHITFIELD, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued June 9, 1998.
Decided August 21, 1998.
*534 Mark Gruber, Hopatcong, for plaintiff-appellant (Gruber & Colabella, attorneys; Mr. Gruber, on the brief).
Salvatore A. Simeone, Morristown, for defendant-respondent (Laurence J. Cutler, attorney; Mr. Simeone, on the brief).
*535 Before Judges LONG, STERN and KLEINER.
The opinion of the court was delivered by KLEINER, J.A.D.
Plaintiff Robert Whitfield (plaintiff or father) appeals from: 1) the denial of his motion seeking enforcement of an Agreement Concerning Parenting (Agreement); 2) an order entered on defendant Margaret Whitfield's (defendant or mother) cross-motion which sought to enforce the terms of a Virginia divorce decree respecting plaintiff's child support obligation; and 3) the motion judge's decision which only partially granted plaintiff's subsequent motion for reconsideration. Plaintiff contends that the motion judge erred in: (1) denying plaintiff discovery and failing to conduct a plenary hearing; (2) failing to enforce the terms of the Agreement, to impose sanctions on defendant for violating the terms of the Agreement, and to award plaintiff counsel fees; (3) failing to reimburse plaintiff for visitation and co-parenting expenses as required by the terms of the Agreement; (4) failing to give full faith and credit to the Virginia divorce decree by improperly determining plaintiff's child support obligation and arrearage; and (5) assessing counsel fees against plaintiff.[1] We agree with plaintiff's contentions and reverse and remand for further proceedings consistent with this opinion.

I
The parties were married on October 22, 1977. They resided together in the Commonwealth of Virginia until August 24, 1994, when defendant and the parties' two minor children moved to New Jersey. The two children, Matthew and Michael, are presently, and respectively, fifteen and eleven years old. Defendant relocated to New Jersey with the minor children because she accepted a position as an investment analyst in New York. Plaintiff remains a Virginia resident.
Prior to defendant's move with the two children to New Jersey, the parties entered into the Agreement, dated June 28, 1994. The Agreement was thereafter incorporated into a "Final Custody and Child Support Consent Order" (Consent Order) entered September 15, 1994. The Agreement was a substantially comprehensive document addressing the parties' rights and responsibilities with respect to the upbringing of their children. It provided a framework for decision making regarding the children, stipulated joint legal custody, but granted primary physical custody to the defendant. Of importance here, and discussed more specifically infra, the Agreement outlined the parenting-time guidelines for plaintiff and both parties' responsibilities in sharing transportation costs for plaintiff's visitation. The Agreement specifically noted that plaintiff was unemployed, having last worked in June 1993 as an appraisal officer.
Four clauses in the Agreement are pertinent to this appeal:
21. Visitation with the Boys Following Margaret's Move.

Subsequent to Margaret's move to the New York City area, if the Boys are then residing with her, Robert shall make every attempt consistent with his then-current employment schedule and economic situation, to visit with the Boys regularly. Similarly, if the Boys are then residing with Robert, Margaret shall make every attempt, consistent with her then-current employment schedule and economic situation, to visit with the Boys regularly. During the first ninety (90) days following Margaret's move ..., in order to establish a continuity of relationships with both Parties, the non-custodial parent shall make every effort to ... visit with the Boys in the area of the Boys' residence on alternating weekends between 6:00 pm Fridays and 6:00 pm Sundays.

*536 If the Boys are residing with Margaret, and Robert has not yet resumed normal employment (defined herein as salary and benefits equal or greater than those which he received at his last employer, MNC Financial) for a period of ninety days, Margaret shall be responsible for and shall pay all reasonable costs of the Boys' meals and nearby lodging (comparable to an Embassy Suites) for Robert and the Boys for alternating weekend visitations.
Subsequent to the first ninety days following Margaret's move with the Boys, Robert shall have the option of having the Boys travel to his residence on alternating weekends for visitation or at his option, he may visit with the Boys in the New York area. Subsequent to the first ninety days following the mother's move, and for the following nine (9) months period, provided that her economic circumstances have not materially deteriorated from what they are upon execution of this Agreement, the Mother shall be responsible for the reasonable costs of visitation, but not to exceed $3,000, in making all arrangements in the New York area and in paying for the reasonable cost of transporting the Boys to the Washington Metropolitan Area once per month as long as the Husband remains in that area or any other area not more than 300 miles from New York City. The Husband shall make all arrangements and pay the costs of local travel, meals, accommodation and entertainment while the Boys are in the Washington Area or other area in which he shall then be residing.
In the second year after the mother's move, assuming that the father is employed, the parties shall share the reasonable costs of transportation for visitation, as set out herein, proportionate to their income. If such sharing works a hardship on either party, he or she can request mediation, or failing agreement in mediation, a Court's determination of the reasonable sharing of visitation costs.[2]
....
29. Child Support. Both Parties acknowledge their responsibilities and obligations for child support which shall be agreed by the parties, or failing agreement determined in accordance with the guidelines for child support then in effect in the Commonwealth of Virginia. As long as one or other of the Parties resides in Virginia, the child support guidelines of that state shall be employed absent an agreement by the Parties to the contrary.
For so long as Robert shall remain unemployed through no fault of his own or he is employed but compensated at less than half of his former salary at MNC Financial, Inc. of $50,000 per year, and Margaret shall continue to receive earnings equal to or greater than at the rate she is now compensated by Tucker Anthony, Margaret shall make no claim for payment to her of any amount for support and maintenance of the Boys....
30. Resolution of Disputes.... The Parties agree that, in the event of any material dispute ..., the Parties will resort to a process of mediation or arbitration....
35. Construction. This Parenting Agreement shall be construed according to the laws of the Commonwealth of Virginia.

II
On January 26, 1994, defendant filed a complaint for divorce in the Fairfax County Circuit Court, Virginia. On September 15, 1994, the Circuit Court entered the Consent Order which ratified the Agreement and specifically provided:
IT IS FURTHER ADJUDGED, ORDERED AND DECREED that the Defendant Robert M. Whitfield, owes a duty of support to the minor children of the parties ...; due to Defendant's current unemployment the child support amount is No/100 dollars as agreed by the parties subject to modification as provided in the Agreement Concerning Parenting.

*537 A Final Decree of Divorce (Decree of Divorce) was entered in Virginia on June 20, 1996, and provided in part:
II. That the Agreement dated February 26, 1996,[3] and executed by the parties hereto, be, and the same hereby is affirmed, ratified and incorporated, but not merged herein, and for this Court's decree, and the parties are ordered to comply with all terms thereof. Absent written agreement to [sic] contrary, this Agreement is a final agreement not subject to modification by either party.
....
C. CHILD SUPPORT. With regard to the former parenting agreement executed by the parties, paragraph 21 (2d, 3rd, and 4th sub-paragraphs only ) are vacated.

(1) The Defendant [Robert Whitfield] will pay the Complainant [Margaret Whitfield] child support, effective March 1, 1996, using Virginia guidelines and he will have imputed income of $30,000 annually (for twelve (12) months from February 26, 1996) and thereafter $35,000.00 annually (or his actual income, whichever is greater). The Defendant [Robert Whitfield], only while living at a distance in excess of seventy-five (75) miles from the children and only for a period of eighteen (18) months, will receive up to $ 300.00 a month credit toward child support for his actual out of pocket motel (standard room at Marriott Courtyard or equivalent) and gas and children's airfare expenses of visitation, upon satisfactory proof that he has paid same.
(2) Additionally, the Defendant [Robert Whitfield] will pay promptly upon receipt of the bills for the children, twenty percent (20%) of all of their unreimbursed medical, dental, psychological, orthodontic, psychiatric, prescription, and related expenses including educational and related expenses (i.e. for either child's learning disabilities, ADD, ADHD, etc. shall be paid by the Defendant [Robert Whitfield]).
....
8. Arrearages:

No support arrearages exist as of the date of this Order. § 20-78.2[4] is inapplicable to this order as no support arrearage exists at this time.[5]
(emphasis added).
According to plaintiff's certifications, during the first weekend that he visited his sons at defendant's home in Chatham, New Jersey, a dispute arose between plaintiff and defendant. Defendant sought protection under the Prevention of Domestic Violence Act and plaintiff was ultimately found guilty of harassment on September 20, 1994. The final restraining order effectively barred plaintiff from visiting his sons. Plaintiff appealed to this court and in an unreported per curiam opinion under Docket No. A-2808-94T3, dated December 7, 1995, we reversed.
On January 27, 1995, plaintiff registered the Consent Order incorporating the Agreement dated June 28, 1994, in New Jersey. The registration predated the entree of the Virginia Decree of Divorce dated June 20, 1996.
On December 4, 1996, plaintiff filed a petition seeking to enforce the registered Consent Order. Plaintiff's petition included a copy of the Virginia Decree of Divorce. Pursuant to his petition, plaintiff obtained an Order to Show Cause requiring defendant to appear in the Family Part and respond to his petition. The crux of plaintiff's petition was to require defendant to mediate visitation *538 issues and to seek approval of a proposed visitation schedule pending further mediation. Plaintiff also contended he was entitled to visitation expenses incurred between June 28, 1994, the date of the Agreement, and June 20, 1996, the date of the divorce decree which modified the Agreement. Plaintiff also sought counsel fees contending that defendant had acted in bad faith by refusing to mediate and establish an interim visitation schedule.
Defendant filed a counterclaim seeking, in part, to enforce the Decree of Divorce dated June 20, 1996; to modify/clarify the Agreement; to direct plaintiff to reimburse defendant for medical expenses; and to compel plaintiff to pay defendant's counsel fees and costs.
In plaintiff's answer, he asserted as an affirmative defense the following:
1. The Courts of New Jersey lack jurisdiction over the issues of child support by virtue of the Uniform Child Custody Jurisdiction Act (UCCJA), the Parental Kidnapping Prevention Act (PKPA), the Revised Uniform Reciprocal Enforcement Act (RURESA) and the Full Faith and Credit for Child Support Orders Act (FFCCSOA).
On January 13, 1997, defendant filed a cross-motion seeking the payment of child support arrears and enforcement of child support in New Jersey. Both motions were returnable on January 24, 1997. Although defendant had never filed a motion in Virginia specifically to set a sum due as child support in modification of the Consent Order which established plaintiff's child support obligation as "No/100 dollars," it is clear that the Decree of Divorce modified the Consent Order, although it reserved setting a sum certain until a future hearing.
As part of plaintiff's pleadings, he filed a lengthy certification outlining numerous alleged violations of the Agreement by defendant. In response, defendant filed a certification disputing each of plaintiff's contentions. Despite the contradictory certifications, the motion judge denied plaintiff's request for a plenary hearing and limited the proceeding to each counsel's oral argument.
The motion judge ordered a temporary visitation schedule through May 16, 1997, as proposed by plaintiff. The judge also granted plaintiff's request that all future visitation issues be resolved through court-supervised mediation. The judge denied plaintiff's request to obtain $19,730.80 in reimbursement for previous visitation expenses under Article 21 of the original Agreement as well as plaintiff's demand to obtain financial information concerning defendant's employment and investment income.
Over plaintiff's objection predicated upon his contention that the court lacked jurisdiction, the judge entered an order setting a monthly child support obligation of $531 and plaintiff's arrears, computed as of March 1, 1996, at $2,541. The judge concluded that this order was not a modification of the Consent Order of September 15, 1994, which established plaintiff's child support obligation as "No/100 dollars," but an enforcement of paragraph II.C of the Decree of Divorce dated June 20, 1996. The judge also ordered plaintiff to pay $1,268.52 in unreimbursed medical expenses.[6] Subject to the receipt of an affidavit of legal services, the judge indicated that he intended to award counsel fees to defendant's counsel. After receiving defendant's counsel's affidavit, and after considering plaintiff's opposition, the judge awarded defendant's counsel $4,500.
Plaintiff moved for reconsideration. On March 6, 1997, the judge reduced plaintiff's monthly child support to $411 and the arrearage to $1,332, "subject to a ruling by the Virginia court on or before March 21, 1997." The judge refused to reconsider his prior ruling respecting enforcement of the Agreement pertinent to the visitation expense reimbursement provisions.
Prior to the January 24, 1997, hearing, defendant had represented that her 1995 employment income was $230,000. Plaintiff was able to establish that defendant's 1996 employment income was $387,000. Defendant did not reveal her investment income. Although plaintiff attempted to subpoena that *539 information, on defendant's motion the subpoenas were quashed.
We now address each component of the initial order of January 24, 1997.[7]

A.
Despite the contradictory certifications filed by the parties concerning various issues, the motion judge refused to conduct a plenary hearing. The motion judge concluded that the provisions of the divorce decree which "vacated" subparagraphs of Article 21 would be construed under New Jersey law and thus concluded that plaintiff would not be entitled to reimbursement for visitation expenses incurred between the inception of the Agreement and the date the Agreement was modified. In essence the judge deemed Paragraph 21 as "void ab initio"[8] and refused to look to Virginia law in construing the term "vacate." The judge deemed plaintiff's entire complaint as "frivolous" and designed to "harass" defendant.
Clearly, the judge erred. Ordinarily, as discussed in Fusco v. Fusco, 186 N.J.Super. 321, 329, 452 A.2d 681 (App.Div. 1982),
[I]f the proper disposition of a matrimonial dispute requires a plenary hearing, the dispute is by definition not subject to the disposition on the papers, with or without oral argument. Moreover, disputes implicating the welfare of a child and involving conflicting contentions and opinions of lay and expert affiants must be submitted to a plenary hearing.
Here, the parties' lengthy contradictory certifications concerning visitation and visitation expense reimbursement merited a plenary hearing. Hallberg v. Hallberg, 113 N.J.Super. 205, 208, 273 A.2d 389 (App. Div.1971); Tancredi v. Tancredi, 101 N.J.Super. 259, 262, 244 A.2d 139 (App.Div.1968). Further, the dispute concerned visitation which required either the plaintiff to travel to New Jersey or the children to travel to the Washington, D.C., area. The certifications clearly established that since moving to New Jersey, one of the children had developed substantial psychological and psychiatric problems which may have had a bearing upon the visitation decision. We conclude that the judge erred in failing to refer the parties' disputes to arbitration and/or mediation in accordance with Paragraph 30 of the Agreement, which states that, in the event of any material dispute, the parties "will resort to a process of mediation or arbitration...."
Additionally, the judge erred in refusing to compel defendant to reveal her 1996 employment income and investment income. Defendant's entire income was pertinent not only to a determination of the parties' proportional responsibility for visitation expenses, but was clearly relevant in determining child support, once the judge concluded that he intended to "enforce" the order for child support embodied in the Virginia divorce decree. See infra part II.C.

B.
The judge also erred in refusing to enforce Paragraph 21 of the Agreement or, alternatively, to interpret it in accordance with Virginia law. The parties specifically agreed that the Agreement would be governed and interpreted under the laws of Virginia.
Where a contract expresses a clear intent to have a particular jurisdiction's law govern, *540 the parties' choice of law will apply unless it violates the public policy of New Jersey. Under the circumstances of this case, there is no public policy which precludes the application of the parties' choice of ... law....
[Haynoski v. Haynoski, 264 N.J.Super. 408, 413, 624 A.2d 1030 (App.Div.1993) (citation omitted).]
Not only did the judge fail to seek a determination under Virginia law respecting the word "vacate," he also did not consider Virginia law respecting provisions of the Agreement which he modified or clarified.[9] This was clear error.
On remand to the Family Part, the meaning of the word "vacate" under Virginia law should first be submitted to mediation and/or arbitration in accordance with Paragraph 30 of the Agreement. Virginia law shall control in the mediation and/or arbitration process. Should judicial intervention become necessary, then Virginia law shall dictate the resolution of this dispute.

C.
N.J.S.A. 2A:34-43 permits an out-of-state litigant to register a certified copy of a decree of a foreign state with the Clerk of the Superior Court pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA).[10] The filing of a foreign decree in New Jersey empowers our courts to enforce the decree, but does not empower them to modify it. Further, the filing of a parenting agreement does not confer absolute jurisdiction to establish an initial support order. See Schuyler v. Ashcraft, 293 N.J.Super. 261, 267, 290-91, 680 A.2d 765 (App.Div.1996), certif. denied, 147 N.J. 578, 688 A.2d 1054 (1997).
The only order which actually fixed plaintiff's child support obligationat "No/100 dollars"was the Consent Order of September 15, 1994. However, the Consent Order was modified by the Decree of Divorce, although the actual amount of support was deferred. But for the Final Decree of Divorce, the New Jersey Court did not possess the authority to modify plaintiff's child support obligation. See 28 U.S.C.A. § 1738B(d) and (e); Schuyler, supra, 293 N.J.Super. at 291, 680 A.2d 765.
The motion judge, though, did not consider that he was modifying the Consent Order of September 15, 1994, but believed he was merely enforcing the Decree of Divorce dated June 20, 1996. The judge did not err, however, in reaching this conclusion. He did err, however, in failing to use the Virginia Child Support Guidelines in enforcing the Decree of Divorce. The Decree of Divorce imputed income to plaintiff and set forth certain credits to which plaintiff was entitled. The only thing left to be accomplished was an essentially ministerial calculation predicated upon the Virginia Child Support Guidelines.
In seeking the aid of the New Jersey courts, to which plaintiff had already resorted, defendant asked only that the amount of support be calculated. No modification was sought or needed. What was sought was pure enforcement. Nothing in 28 U.S.C.A. § l738B(e) limits the right of our courts to order such enforcement. An order setting forth a child support figure in full accord with the Decree of Divorce is not a modification within the meaning of 28 U.S.C.A. § l738B(e). The limitation on modification in 28 U.S.C.A. § l738B(e) has, as its purpose, the avoidance of conflict between courts of different jurisdictions and the effectuation of full faith and credit. Congressional *541 Findings and Declaration of Purpose, Pub.L. No. l03-383, § 2 (1994). An order carrying out a judgment from another state, in fact, extends full faith and credit to that judgment. That is the case here. As a result, we conclude that the motion judge had jurisdiction to enter and enforce the child support order sought by defendant. However, the judge erred when he failed to utilize the Virginia Child Support Guidelines. We therefore reverse the order of March 6, 1997, and remand the case to the motion judge for that purpose. In so doing, the motion judge may hold such proceeding, summary or plenary, as he deems is warranted based on his interpretation of Virginia's procedure as delineated by the guidelines. The motion judge shall also consider the effect, if any, of the decision reached by Judge Dennis Smith of the Fairfax County Circuit Court on April 11, 1997, that jurisdiction over custody would be transferred to New Jersey with Virginia retaining jurisdiction over child support as long as plaintiff resides in Virginia. See supra note 7. Further proceedings in New Jersey shall be concluded within sixty days of the date of this opinion.

D.
As noted, plaintiff requested an award of counsel fees. Not only did the motion judge deny plaintiff's request, he awarded counsel fees to defendant. Clearly, the judge failed to consider Williams v. Williams, 59 N.J. 229, 281 A.2d 273 (1971), which requires a court to consider "the wife's need, the husband's financial ability to pay and the wife's good faith in instituting or defending the action." Id. at 233, 281 A.2d 273; Chestone v. Chestone, 285 N.J.Super. 453, 466-68, 667 A.2d 371 (App.Div.1995). We see no reason why the language in Williams, supra, cannot be read to require a court to consider on a husband's application for counsel fees the husband's need, the wife's financial ability to pay and the husband's good faith in instituting or defending the action.
Here, plaintiff clearly acted in good faith in attempting to establish a visitation schedule and in seeking to compel defendant to submit their visitation dispute to mediation. Plaintiff, who was unemployed, should not have been compelled to pay defendant's counsel fees where defendant was earning in excess of $300,000 per annum. The award of counsel fees to defendant was an abuse of discretion, as was the denial of plaintiff's application for counsel fees to defray a portion of his expenses incurred in enforcing the terms of the Agreement.

III
In sum, we reverse the motion judge's order entered on March 6, 1997. The parties' remaining disputes respecting the Agreement shall be referred to mediation and/or arbitration. The enforcement of the Decree of Divorce shall be reconsidered. The motion judge shall reconsider plaintiff's demand for counsel fees. We do not retain jurisdiction. No costs on appeal will be awarded.
NOTES
[1] Although the Agreement provides in Paragraph 30 that in all material disputes the "Parties will resort to a process of mediation or arbitration," on appeal, plaintiff does not contend that the motion judge erred in modifying certain terms of the Agreement or in clarifying certain terms of that agreement vis a vis his relationship with defendant as to daily custodial parental decisions. Despite the absence of an appealable issue, the power to modify/clarify is discussed infra in sections II.B and C of this opinion.
[2] As noted infra, this clause was amended by paragraph II.C of the Final Decree of Divorce, dated June 20, 1996.
[3] The agreement of February 26, 1996, has not been made a part of the record on appeal. We have the impression that this agreement attempted to resolve equitable distribution of property issues.
[4] A statutory provision then in effect in the Commonwealth of Virginia.
[5] It is obvious from "Clause 8" that a specific support order had not as of that date been entered by the Virginia Court. It also seems quite apparent that the motion judge in New Jersey was advised that a future hearing to determine support was then to be conducted in Virginia on March 21, 1997. This is implicit in the New Jersey order on the plaintiff's motion for reconsideration on issues of support and arrears, in which the motion judge reduced the support and reduced the arrears "subject to a ruling by the Virginia court on or before March 21, 1997."

See infra.
[6] Plaintiff immediately paid $1,268.52 to defendant.
[7] On March 5, 1997, plaintiff filed a Motion to Determine Child Support in the Circuit Court in Fairfax County, Virginia. In response, defendant filed a Motion to Transfer Jurisdiction of Child Support and Custody to New Jersey. After conferring with the presiding judge of the Family Part in Morris County on April 3, 1997, Judge Dennis Smith of Fairfax County Circuit Court ruled on April 11, 1997, that jurisdiction over custody would be transferred to New Jersey with Virginia retaining jurisdiction over child support as long as plaintiff resides in Virginia.

It seems clear from the record that the anticipated March 21, 1997, support hearing had been postponed until April 3, 1997.
The record on appeal does not reflect the decision on plaintiff's Motion to Determine Child Support. At oral argument, we were advised that the hearing in Virginia as to child support has been postponed pending the resolution of this appeal.
[8] The judge stated, "If a provision of an order is vacated, that means it's wiped clean. It's gone. It never was."
[9] Subsequent to the New Jersey court's refusal to construe the word "vacate" in accordance with Virginia law, plaintiff sought a declaratory judgment in Virginia as to the meaning of the word "vacate." The Circuit Court of Fairfax County dismissed that action on March 27, 1998, concluding that the same issue had been fully litigated in New Jersey. Plaintiff has filed an appeal to the Court of Appeals of Virginia.
[10] This opinion does not address P.L.1998, CHAPTER 2, approved March 5, 1998, "AN ACT concerning support proceedings, supplementing Title 2A of the New Jersey Statutes and repealing P.L.1981, c. 243 and sections 15 and 16 of P.L. 1985, c. 278," codified as C. 2A:4-30.65 to -.123. Nor does it address P.L.1998 CHAPTER 1, approved March 5, 1998, "AN ACT concerning child support reform and revising parts of statutory law," the "New Jersey Child Support Program Improvement Act," codified as C. 2A:17-56.7a & 2A:17-56.7b §§ 3-17, C. 2A:17-56.52 to -56.66.